[No. B243654. Second Dist., Div. Five. Feb. 6, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY CORRALES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1005(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.3.

**COUNSEL**

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Paul M. Roadarmel, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

A jury convicted defendant, Anthony Corrales, of methamphetamine possession in violation of Health and Safety[1] Code section 11377, subdivision (a). He admitted he had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b). Imposition of sentence was suspended. Defendant was placed on one year of Penal Code section 1210.1 probation.

Defendant's sole contention on appeal is that the trial court improperly denied his Penal Code section 1538.5 evidence suppression motion. In the published portion of the opinion, we affirm the trial court's denial of defendant's suppression of evidence motion. Also, upon remittitur issuance, the trial court is to determine defendant's ability to pay a section 11372.7, subdivision (b) drug program fee together with penalties and the surcharge.

## II. DISCUSSION

### A. The Evidence Suppression Motion

Defendant challenges the legality of a traffic stop. Defendant argues the officers could not have legally temporarily detained him. The evidence at the suppression hearing was as follows. At 11:10 a.m. on October 22, 2011, Officer William Lantz and a partner, identified only as Officer Seboda, were patrolling in North Hollywood. Officer Lantz was driving. The officers saw defendant parked on the side of the road using his cellular telephone. Defendant was the sole occupant of a silver Nissan. He was in the driver's seat. Defendant was using his cellular telephone to send a text message. The officers passed right next to defendant, driving very slowly. Five minutes later, the officers approached defendant again. This time defendant was pulling out into traffic as the officers approached. The officers were right behind defendant when he pulled out in front of them and drove southbound on Cahuenga Boulevard. Defendant was leaning and looking down. He was making movements with his hand as if he was texting. Defendant continued to

---

[1] Unless otherwise noted, all future statutory references are to the Health and Safety Code.

text for 30 to 40 seconds. The officers pulled defendant over for texting while driving, a violation of Vehicle Code section 23123.5. Subsequent to the traffic stop, defendant was arrested for being under the influence of a controlled substance. (§ 11550, subd. (a).) During a search incident to the arrest, the officers found a baggie containing methamphetamine in defendant's right shoe.

■ Defendant does not contend that once he was stopped, there was no valid basis for the search which uncovered the methamphetamine or his arrest. Rather, defendant contends the initial stop, based on the fact the officers concluded he was texting while driving, was constitutionally unreasonable. Our Supreme Court has held: "The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729]; accord, *People v. Redd* (2010) 48 Cal.4th 691, 719 [108 Cal.Rptr.3d 192, 229 P.3d 101].) A police officer's reasonable suspicion that a driver has violated the Vehicle Code justifies a traffic stop and detention. (*Ornelas v. United States* (1996) 517 U.S. 690, 693 [134 L.Ed.2d 911, 116 S.Ct. 1657]; *People v. Wells* (2006) 38 Cal.4th 1078, 1082 [45 Cal.Rptr.3d 8, 136 P.3d 810]; *People v. Vibanco* (2007) 151 Cal.App.4th 1, 8 [60 Cal.Rptr.3d 1].) Reasonable suspicion is a lesser standard than probable cause. (*Alabama v. White* (1990) 496 U.S. 325, 330 [110 L.Ed.2d 301, 110 S.Ct. 2412]; *People v. Wells, supra,* 38 Cal.4th at p. 1083.) As our Supreme Court held in *Wells*: "[T]o be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity." ' (*In re Tony C.* [(1978)] 21 Cal.3d [888,] 894 [148 Cal.Rptr. 366, 582 P.2d 957].)" (*People v. Wells, supra,* 38 Cal.4th at p. 1083.) Further, as the United States Supreme Court has held: "[Law enforcement] officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to [him or her] that 'might well elude an untrained person.' [Citations.]" (*United States v. Arvizu* (2002) 534 U.S. 266, 273 [151 L.Ed.2d 740, 122 S.Ct. 744]; accord, *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145–146 [112 Cal.Rptr.3d 746, 235 P.3d 62]; *People v. Hernandez* (2008) 45 Cal.4th 295, 299 [86 Cal.Rptr.3d 105, 196 P.3d 806].)

Defendant argues the trial court should have granted his motion to suppress all of the evidence because, "[T]he fact that [defendant] was looking down and moving his arm did not, without more, give rise to a reasonable suspicion that he was texting." Further, defendant argues: "[Officer] Lantz only relied on the fact that [defendant] was looking down. [Officer] Lantz admitted he did not see [defendant's] hand, but testified he saw [defendant's] looking down and moving like he was doing something."

The relevant portions of Vehicle Code section 23123.5 are as follows: "(a) A person shall not drive a motor vehicle while using an electronic wireless communications device to write, send, or read a text-based communication, unless the electronic wireless communications device is specifically designed and configured to allow voice-operated and hands-free operation to dictate, send, or listen to a text-based communication, and it is used in that manner while driving. [¶] (b) As used in this section 'write, send, or read a text-based communication' means using an electronic wireless communications device to manually communicate with any person using a text-based communication, including, but not limited to, communications referred to as a text message, instant message, or electronic mail."

■ Based on the historical facts found by the trial court, the decision to stop defendant was reasonable. The officers saw defendant parked by the side of the road texting on his cellular telephone. When defendant was texting while parked by the side of the road, the officers drove by very slowly. Approximately five minutes later, the officers returned to where they had seen defendant parked and using his cellular telephone to send a text message. As the officers returned, defendant pulled out into traffic in front of them. The officers saw defendant was driving. Defendant was leaning and looking down a few times as though he was still using his cellular telephone. Defendant was making movements with his hands as if he was texting. Defendant engaged in this conduct for 30 to 40 seconds. Officer Lantz had been a police officer for 16 years when defendant was arrested. To sum up, defendant was observed using his cellular telephone, while parked by the side of a road, to send a text message. Five minutes later, defendant was engaged in conduct an experienced police officer could reasonably believe involved texting while driving, a violation of Vehicle Code section 23123.5, subdivision (a). No Fourth Amendment violation occurred.

### B. Penalties and Surcharge

#### 1. Overview

The trial court imposed a $50 criminal laboratory analysis fee (§ 11372.5, subd. (a)) and a $150 drug program fee (§ 11372.7, subd. (a)). None of the

penalties or the surcharge we shall discuss shortly were orally imposed by the trial court on either fee. Nor did the trial court use the shorthand expression "plus penalty assessment" we approved of in *People v. Sharret* (2011) 191 Cal.App.4th 859, 864 [120 Cal.Rptr.3d 195]. In *Sharret*, the trial court orally imposed the drug program fee and then used the term "plus penalty assessment" to refer to the penalties and the surcharge. We explained that the shorthand reference to "plus penalty assessment" satisfied the requirement that the oral pronouncement of judgment refer to the additional penalties and surcharge. (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1373 [133 Cal.Rptr.3d 431].) Here, no oral reference was made to the penalties and surcharge either directly or indirectly as in *Sharret*. We asked the parties to brief the question whether it was error to fail to impose the penalties and surcharge on the fees. Defendant committed the present offense on October 22, 2011.

### 2. Section 11372.7, subdivision (a) drug program fee

■ As noted, the trial court did not orally impose any penalties or the surcharge on the section 11372.7, subdivision (a) drug program fee. With specified exceptions, section 11372.7, subdivision (a) requires defendants convicted of offenses listed in chapter 6 of division 10 of the Health and Safety Code to pay a drug program fee. Section 11372.7, subdivision (a) states: "Except as otherwise provided in subdivision (b) or (e), each person who is convicted of a violation of this chapter shall pay a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense. The court shall increase the total fine, if necessary, to include this increment, which shall be in addition to any other penalty prescribed by law."

The first exception to the mandatory fee is an ability to pay component in section 11372.7, subdivision (b). If the accused cannot afford to pay the fine, the trial court is prohibited from imposing it. Section 11372.7, subdivision (b) states: "The court shall determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee. If the court determines that the person has the ability to pay, the court may set the amount to be paid and order the person to pay that sum to the county in a manner that the court believes is reasonable and compatible with the person's financial ability. In its determination of whether a person has the ability to pay, the court shall take into account the amount of any fine imposed upon that person and any amount that person has been ordered to pay in restitution. If the court determines that the person does not have the ability to pay a drug program fee, the person shall not be required to pay a drug program fee." The

second exception is found in section 11372.7, subdivision (e) which states, "This section shall not apply to any person convicted of a violation of subdivision (b) of Section 11357 . . . ." Section 11357, subdivision (b) states, "Except as authorized by law, every person who possesses not more than 28.5 grams of marijuana, other than concentrated cannabis, is guilty of an infraction punishable by a fine of not more than one hundred dollars ($100)." It is the first exception, the ability to pay component, that is at issue here.

The $150 drug program fee was subject to a $150 state penalty (Pen. Code, § 1464, subd. (a)(1)); a $105 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $30 state surcharge (Pen. Code, § 1465.7, subd. (a)); a $45 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $15 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $15 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)); and a $30 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1)). However, as noted, the drug program fee has an ability to pay provision. (§ 11372.7, subd. (b).) We presume the trial court determined defendant was able to pay a $150 fee. But the total amount payable is not $150 but $540. The probation report contains no evidence of defendant's assets. The probation report states defendant is an unemployed ex-convict. Thus, there is no substantial evidence defendant has the ability to pay the drug program fee after it has been enhanced by the penalties and surcharge. Upon remittitur issuance, the trial court is to conduct a hearing concerning defendant's ability to pay the drug program fee in light of his total financial obligations. (See *People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1532 [98 Cal.Rptr.3d 1] [local crime prevention programs fine (Pen. Code, § 1202.5)]; *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1249–1250 [92 Cal.Rptr.3d 13] [sex offenses fine (Pen. Code, § 290.3)].)

3. Section 11372.5 laboratory fee[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III. DISPOSITION

The judgment is modified to impose penalty assessments on the criminal laboratory analysis fee as set forth above in the unpublished portion. The drug program fee is reversed. Upon remittitur issuance, the trial court is to determine defendant's ability to pay a drug program fee together with the penalties and surcharge in light of all of defendant's financial circumstances.

---

[*]See footnote, *ante*, page 696.

If defendant does have the ability to pay, the drug program fee is to be reinstated with the additional penalties and surcharge. In all other respects, the judgment is affirmed.

Armstrong, J., and Mosk, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 1, 2013, S209233.