Filed 7/30/13

# CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| **THE PEOPLE,** | |
| **Plaintiff and Respondent,** | **A134124** |
| **v.** | |
| **DEMETRIS COLEMAN,** | **(Contra Costa County** |
| **Defendant and Appellant.** | **Super. Ct. No. 05-110237-5)** |

The People charged appellant Demetrius Coleman with possession of cocaine base for sale (Health & Saf. Code, § 11351.5). Before the preliminary hearing, appellant moved — pursuant to *Pitchess*[1] and other authority — for discovery of material in the personnel file of Matthew Stonebreaker, the arresting officer for the City of Richmond (City). Appellant also requested the City police department "run a 'rap sheet' on Officer Stonebreaker." The court conducted an in camera hearing pursuant to *Pitchess*, reviewed Officer Stonebreaker's personnel file, and ordered the City to disclose information concerning a "complaint of false identifying information." The court, however, denied appellant's discovery motion to the extent it sought Officer Stonebreaker's birth date and rap sheet.

At the preliminary hearing, appellant moved to suppress. The magistrate denied the motion and the trial court denied appellant's joint motions to set aside the information

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II., and IV.

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

1

and to renew the suppression motion (Pen. Code, §§ 995, 1538.5, subd. (i)).  Before trial, appellant moved for an order pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) and Penal Code section 1054.1 requiring the prosecution to, among other things, run rap sheets on all testifying prosecution witnesses.  The court granted the motion in part and denied it in part, explaining it would order the People to comply with *Brady* but would "not order rap sheets to be run on the officers."

A jury convicted appellant and the court sentenced him to county jail.  The court also ordered appellant to pay a $570 drug program fee pursuant to Health and Safety Code section 11372.7, subdivision (a), and $500 in attorney fees pursuant to Penal Code section 987.8, subdivision (b).

On appeal, appellant contends the court erred by: (1) denying his motion to suppress; (2) declining to order the prosecution to disclose Officer Stonebreaker's "criminal history;" (3) delegating to the probation department the determination of his ability to pay the drug program fee under Health and Safety Code section 11372.7; and (4) ordering him to pay attorney fees pursuant to Penal Code section 987.8 without determining his ability to pay.

In the unpublished portion of the opinion, we conclude the court properly denied appellant's motion to suppress evidence.  We also conclude the court abused its discretion by denying appellant's discovery motion to the extent it sought Officer Stonebreaker's criminal history (if any) and that the error was prejudicial.  Accordingly, we conditionally reverse the judgment with directions to the trial court to order the prosecutor to run Officer Stonebreaker's rap sheet as of the date of trial, to conduct an in camera review in accordance with the procedures set forth in *Pitchess*, and to disclose Officer Stonebreaker's felony convictions or misdemeanor convictions involving moral turpitude, if any.  If there are such convictions, the court must evaluate the evidence in light of the entire record and determine whether to grant appellant a new trial.  (See *People v. Hayes* (1992) 3 Cal.App.4th 1238, 1246 (*Hayes*); see also *People v. Hustead* (1999) 74 Cal.App.4th 410, 419 (*Hustead*).)  If there are no such convictions, the court will reinstate the original judgment.  If the original judgment is reinstated, the attorney

fee order must be reversed because there is insufficient evidence of appellant's present ability to pay such fees.

In the published portion of the opinion, we conclude the drug program fee must be reversed if the court reinstates the judgment because the court improperly delegated to the probation department the determination of appellant's ability to pay the drug program fee and because the record does not support an implied finding of his ability to pay. On remand, the trial court must determine appellant's ability to pay the drug program fee under Health and Safety Code section 11372.7 and attorney fees pursuant to Penal Code section 987.8.

## FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged appellant with possession of cocaine base. Before the preliminary hearing, appellant moved to suppress, claiming the charge was based on "evidence derived from an unreasonable search and seizure."

### Initial Motion to Suppress

At the preliminary hearing, Officer Stonebreaker testified he and Officer Danielle Evans were riding their police bicycles westbound on Bissell Avenue in Richmond at 5:00 p.m. on September 24, 2009. The neighborhood where the officers were riding is "a known drug area" where people buy and sell drugs. Both officers were in uniform.

As they rode, they saw a man they later identified as appellant walking on the sidewalk along Bissell Avenue. The officers rode up to appellant, dismounted, and said, "[W]hat's up[?]" Appellant stopped walking. Officer Stonebreaker stood about five feet from appellant and asked his name. Appellant gave his name. Then Officer Stonebreaker asked appellant for his date of birth and appellant complied.[2] As Officer Evans ran a warrant check, Officer Stonebreaker talked to appellant, explaining that he and Officer Evans were part of a bicycle unit and were meeting "residents in the area."

---

[2] On cross-examination, Officer Stonebreaker denied asking appellant if he possessed any drugs and denied asking appellant for permission to search him. Officer Stonebreaker did, however, ask appellant whether he was on probation or parole and whether he "had anything illegal on him."

3

According to Officer Stonebreaker, appellant "stopped to talk to us to see what it was. That's all." While the officers waited for the warrant check results, they did not direct or command appellant to do anything.

About three minutes — "or a short time" — after the encounter began, the officers received a report that appellant "had a warrant out of Solano County." Officer Stonebreaker handcuffed appellant. While the officers waited for a vehicle to transport appellant to jail, Officer Stonebreaker saw appellant "adjust[] his pants a couple of times" and pull out a "clear plastic bagg[ie] containing an off-white chunky substance." Appellant tossed the baggie behind him; it landed about two or three feet away on the other side of a fence. Officer Stonebreaker retrieved the baggie while Officer Evans put appellant in the patrol car. Officer Evans did not see appellant discard the baggie. When Officer Stonebreaker retrieved the baggie, appellant "became very angry" and "very verbally abusive, and saying whatever we found was not his." The baggie contained 6.29 grams of cocaine base. Officer Stonebreaker also found $193 in appellant's pockets.

Carlos English, a homeless man who collects cans in a shopping cart and recycles them, testified he had come into contact with Officer Stonebreaker about 10 times and that he is a "nightmare." According to English, Officer Stonebreaker digs through his shopping cart full of cans, "turn[s] it over[,]" and harasses him "for nothing." Officer Stonebreaker did not recall meeting English, overturning his shopping cart, or investigating him.

After hearing lengthy argument from counsel, the court denied the motion to suppress, concluding the encounter was consensual.

*Renewed Motion to Suppress*

Appellant filed joint motions to set aside the information and to renew the suppression motion (Pen. Code, §§ 995, 1538.5, subd. (i)). The trial court denied the motions. It noted the officers "did not issue any commands; they did not block [appellant's] path; they did not display any weapons. The evidence did not reflect a physical touching of [appellant's] person or a tone of voice indicating that it was mandatory for [appellant] to answer Officer Stonebreaker's questions. [¶] The encounter

4

occurred in daylight at a seemingly busy location. The public nature of the encounter is arguably increased because the officers were on bicycles — no patrol cars to shield from public view whatever was going on." Finally, the court concluded the fact that the officers performed a warrant check, by itself, did not transform the encounter into a detention.

*Appellant's Discovery Motions and Requests*

Several months before the preliminary hearing, appellant filed a motion for discovery of material in Officer Stonebreaker's personnel file "indicating . . . internal and civilian complaints, investigations, or reports in which allegations of corruption, illegal arrests and/or searches, the fabrication of charges and/or evidence, acts of harassment or malicious conduct against citizens, dishonesty and improper tactics . . . or false arrest." The motion also requested the Richmond Police Department "run a 'rap sheet' on Officer Stonebreaker." Appellant brought the motion pursuant to *Pitchess*, *Brady*, and Evidence Code sections 1043, 1045, and 1046. Defense counsel's supporting declaration averred appellant did not possess narcotics on the day of the incident and did not "toss[] a bag of cocaine from his person." Counsel stated the City, the Richmond Police Department and/or the Contra Costa County District Attorney's Office possessed the materials and that there was good cause to produce them because Officer Stonebreaker had a "tendency to fabricate incident reports and initiate detentions without reasonable suspicion."

The City opposed the motion, arguing: (1) appellant had not demonstrated the confidential information regarding Officer Stonebreaker's prior conduct was material to the issues at the preliminary hearing; and (2) it "d[id] not have actual possession of criminal history records" and was not required to search for them.

Following a hearing, the court indicated it would examine Officer Stonebreaker's personnel file for "dishonesty in terms of falsifying information." The court declined, however, to "order a CNI rap sheet run on the officer" and declined "to give the date of birth of the officer" to defense counsel because it determined the rap sheet and birth date were "something that's reserved for trial." The court then conducted an in camera

hearing and ordered the City to disclose information concerning a "complaint of false identifying information."

Appellant moved for reconsideration, arguing he was entitled to *Pitchess* discovery before the preliminary hearing under *Galindo v. Superior Court* (2010) 50 Cal.4th 1. Appellant suggested the court order the City to disclose Officer Stonebreaker's birth date to the prosecution so the prosecution could run the rap sheet. The City opposed the motion and appellant's request to order the City to disclose the birth date to the prosecution. The court denied the reconsideration motion, concluding the "original *Pitchess* motion did not have a sufficient basis of materiality or evidence for the court to consider . . . releasing the date of birth or rap sheet." The court continued, "I don't believe there's any legal authority to provide a rap sheet . . . particularly without any showing whatsoever that a rap sheet would be relevant to this, as well as the date of birth is not relevant to the *Pitchess* motion."

In a pretrial motion, appellant moved for an order — pursuant to *Brady* and Penal Code section 1054.1 — requiring the prosecution to, among other things, run rap sheets on all prosecution witnesses. The court granted the motion "except that I will not order rap sheets to be run on the officers. However, I will require the People to comply with *Brady*. Somewhat of a distinction." Defense counsel objected and argued: "I think that the prosecution should be required to run rap sheets on their police witnesses. There's no reason to exempt them. And it's my understanding that the prosecution does run rap sheets on all of their other witnesses as well as defense witnesses and sometimes even jurors." The court noted the objection and overruled it.

### Trial[3]

At 5:00 p.m. on September 24, 2009, Officers Stonebreaker and Evans were on bicycle patrol on Bissell Avenue — an area known for narcotics activity — when they saw appellant walking alone. The officers rode up to appellant, and said, " 'What's up' to him." Officer Stonebreaker told appellant he was part of the bicycle patrol program

---

[3] We summarize the evidence at trial as relevant to appellant's claim regarding the discoverability of Officer Stonebreaker's "criminal history."

6

and that he and Officer Evans were "contacting people in the . . . area and introducing ourselves and letting them know what the bicycle program was about." Officer Stonebreaker asked for appellant's name and date of birth. At that point, the officers were off of their bicycles. Officer Stonebreaker also asked appellant whether he was on probation or parole, and whether he had anything illegal.[4] Appellant complied. The conversation was "cordial. It was good."

As the officers spoke to appellant, they learned he had an outstanding warrant. Officer Stonebreaker put handcuffs on appellant and "double locked" them to make sure the handcuffs were "completely locked." Officer Stonebreaker searched appellant's pockets, found $193 in small bills, and called for a transport unit. Appellant stood, handcuffed, with a wrought iron fence behind him. Officer Stonebreaker was standing between three and five feet from appellant, on appellant's left side. Officer Evans stood on appellant's other side, facing Officer Stonebreaker. The officers and appellant formed a triangular position.

While appellant stood there, both officers noticed appellant was adjusting his pants by "wiggling left to right to pull his pants up." While he was doing this, appellant laughed with the officers in a way that seemed "like he was trying to distract" them. Then appellant "took out something . . . that was in plastic" with his fingertips and "threw it between the bars of the wrought iron fence." Officer Stonebreaker saw the object land about three feet away, on the other side of the fence. Officer Evans did not see appellant throw the object; although she sometimes faced appellant as the officers waited for the transport unit to arrive, she was looking at the surrounding area to "make sure that the scene was safe."

Officer Stonebreaker told Officer Evans that appellant had "dropped" something, pointed out the object to Officer Evans, and went to retrieve it. At that point, the patrol car arrived and Officer Evans placed appellant in the car. Officer Stonebreaker retrieved the object: a clear plastic baggie containing two smaller baggies, one that held 18

---

[4] Officer Stonebreaker testified he asked appellant for permission to pat search but did not pat search appellant until after he arrested him.

7

individually packaged pieces and one that held small to larger chunks — or about 6.29 grams — of cocaine base.

Appellant testified he was in Richmond on the day of the incident to have his friend repair his car. Appellant had approximately $200 and was going to use it to pay his friend for the repairs.[5] When appellant arrived at his friend's house, his friend "wasn't ready" so appellant walked to a nearby store to buy a bottle of water. As he walked to the store, he noticed Officers Stonebreaker and Evans had "someone else detained."

On his way out of the store, the officers rode up to appellant and asked him what he was doing in the neighborhood. Officer Stonebreaker asked appellant for his name and whether he "ha[d] any guns on [him]." The officers were not "cordial." They did not explain the bicycle patrol program. Appellant said Officer Stonebreaker could search him for weapons; Officer Stonebreaker then asked appellant a few more questions and started patting him down by "digging" in his pockets. When appellant said, "Why [are] you digging in my pockets," Officer Stonebreaker told appellant to place his hands behind his back and handcuffed him. He eventually told appellant about the warrant.

The handcuffs were extremely tight and prevented appellant from adjusting his pants, which "were falling down."[6] Appellant asked Officer Evans to help him with his pants and she complied. Appellant did not adjust his pants while he was handcuffed. He did not possess cocaine base or throw any cocaine base on the day of the incident. Appellant had been convicted of false imprisonment and possession of a firearm by a felon.

---

[5] Appellant's friend testified he agreed to repair the car for $200 and that appellant came to his house on the day of the incident. Appellant's friend had a theft conviction.

[6] Appellant did not know whether Officer Stonebreaker used one pair of handcuffs or two. A defense investigator and former police officer handcuffed appellant before the jury using a pair of "regulation size" handcuffs. Officer Evans testified that Officer Stonebreaker used two sets of handcuffs because of appellant's size.

*Verdict and Sentencing*

The jury convicted appellant of possession of cocaine base for sale (Health & Saf. Code, § 11351.5) and the court sentenced him to three years in jail. Among other things, the court ordered appellant to pay a $570 drug program fee (Health & Saf. Code, § 11372.7, subd. (a)) and $500 in attorney fees (Pen. Code, § 987.8, subd. (b)). At the sentencing hearing, the court stated: "[Appellant is] to pay a court security fee of $40, a court conviction assessment of $30, a probation report fee of $176, a criminal justice administration fee of . . . $564. [¶] A lab analysis fee . . . of $190 and a drug program fee of $570. [¶] All of these other fines and fees, except for the $600 restitution fee, are based on his ability to pay. So probation will do an analysis of his ability to pay and it will be set that way. [¶] Attorney's fees will be assessed in the amount of $500." Defense counsel did not object to the imposition of these fees.

The probation report does not recommend the imposition of the drug program fee or attorney fees, nor does it address appellant's ability to pay such fees. The report, however, describes appellant's education and employment history. Appellant — who was 39 years old at the sentencing hearing — earned his General Education Diploma (G.E.D.) and took several classes toward earning an administrative justice certificate. He dropped out of the program after losing his driver license. Appellant suffers from numerous health problems and has been diagnosed with schizophrenia. The probation report describes appellant as "employable" and notes he has "electrical skills. He was employed by the Chevron Refinery in Richmond performing fire watch duties from 1993 to 1997. . . . He was employed by Veraflow in Richmond, which manufactures parts for the Chevron Refinery. Additionally he possesses skills in painting and landscaping." Before appellant was incarcerated, he was the primary caregiver for his ailing sister. According to the probation report, appellant "reported that he does not have a checking or saving account. He advised that he has no assets."

9

DISCUSSION

I. *The Court Properly Denied Appellant's Motion to Suppress**

"A criminal defendant is permitted to challenge the reasonableness of a search or seizure by making a motion to suppress at the preliminary hearing. [Citation.] If the defendant is unsuccessful at the preliminary hearing, he or she may raise the search and seizure matter before the superior court under the standards governing a [Penal Code] section 995 motion. [Citation.]

"In a proceeding under [Penal Code] section 995, the superior court's role is similar to that of an appellate court reviewing the sufficiency of the evidence to sustain a judgment. [Citation.] The superior court merely reviews the evidence; it does not substitute its judgment on the weight of the evidence nor does it resolve factual conflicts. [Citation.] On appeal from a [Penal Code] section 995 review of the denial of a defendant's motion to suppress, we review the determination of the magistrate at the preliminary hearing. [Citations.] We must draw all presumptions in favor of the magistrate's factual determinations, and we must uphold the magistrate's express or implied findings if they are supported by substantial evidence. [Citations.]

"[To determine] whether the challenged search or seizure was reasonable under the Fourth Amendment, we review the magistrate's factual determinations under the substantial evidence standard. [Citation.] We judge the legality of the search by 'measur[ing] the facts, as found by the trier, against the constitutional standard of reasonableness.' [Citation.] Thus, in determining whether the search or seizure was reasonable on the facts found by the magistrate, we exercise our independent judgment. [Citation.]" (*People v. McDonald* (2006) 137 Cal.App.4th 521, 528-529.)

Police contacts with individuals fall into three broad categories: (1) consensual encounters; (2) detentions; and (3) formal arrests. (*In re Manuel G.* (1997) 16 Cal.4th 805, 821 (*Manuel G.*); *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784 (*Wilson*).) The Fourth Amendment does not protect every encounter between the police and a

---

* See footnote, *ante*, page 1.

citizen. (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460.) As the United States Supreme Court has explained, "law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." (*Florida v. Royer* (1983) 460 U.S. 491, 497; *Wilson, supra,* 34 Cal.3d at p. 789; accord, *Florida v. Bostick* (1991) 501 U.S. 429, 434 (*Bostick*) [a detention does not occur when a police officer approaches a person on the street and "asks a few questions"].)

"[N]o reasonable suspicion is required on the part of the officer" before initiating a consensual encounter. (*Manuel G., supra,* 16 Cal.4th at p. 821; accord, *People v. Hughes* (2002) 27 Cal.4th 287, 327.) To determine whether an encounter is consensual, a court considers "all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Bostick, supra,* 501 U.S. at p. 439; accord, *Michigan v. Chesternut* (1988) 486 U.S. 567, 573.) Put another way, an encounter is consensual if, after considering the totality of the circumstances, "a reasonable person would feel free to disregard the police and go about his or her business." (*Manuel G.,* at p. 821.) "What constitutes a restraint on liberty such that a person would conclude that he is not free to leave varies with the particular police conduct at issue and the setting in which the conduct occurs. [Citation.]" (*People v. Ross* (1990) 217 Cal.App.3d 879, 884, disapproved on another point as stated in *People v. Walker* (1991) 54 Cal.3d 1013, 1022.)

In contrast, a detention requires an "articulable suspicion that the person has committed or is about to commit a crime." (*Manuel G., supra,* 16 Cal.4th at p. 821.) A detention occurs when the police, by physical force or show of authority, have in some way restrained a person's liberty. (*Bostick, supra,* 501 U.S. at p. 434; *People v. Cartwright* (1999) 72 Cal.App.4th 1362, 1367.) "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the

11

threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (*United States v. Mendenhall* (1980) 446 U.S. 544, 554; *People v. Terrell* (1999) 69 Cal.App.4th 1246, 1254.) Other factors include the time and place of the encounter, whether the defendant was informed he was free to leave, whether the police indicated the defendant was suspected of a crime, whether the police retained the defendant's documents, and whether the police exhibited other threatening behavior. (See, e.g., *Wilson, supra,* 34 Cal.3d at p. 790; *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1227.)

Appellant contends he was detained because the officers "ask[ed] him a series of intrusive questions" about "whether he was on probation or parole and had anything illegal on his person." According to appellant, a reasonable person in this situation would not feel free to leave. We disagree. We conclude appellant was not detained. The officers rode their bicycles up to appellant in a public place and stopped several feet away from him. They did not command him to stop. The officers did not block his path or display any weapons. They did not touch appellant. As Officer Stonebreaker explained, appellant "stopped to talk to us to see what [the bicycle patrol program] was. That's all." (*United States v. Drayton* (2002) 536 U.S. 194, 197-200 [defendant not detained when an officer wearing a concealed weapon boarded a bus, showed his badge to the defendant, questioned him, arrested his companion, and then asked the defendant to consent to a patdown search].)

Appellant relies on *Wilson, supra,* 34 Cal.3d 777. In *Wilson*, an undercover narcotics officer — who had been monitoring incoming flights from Florida to discover transportation of drugs into California — saw the defendant and another man arrive at the Los Angeles International Airport on a flight from Miami. (*Id.* at p. 780.) The officer followed the defendant and the other man through the terminal, and then approached the defendant as he stood next to his car parked at the curb. (*Id.* at pp. 780-781.) The officer asked the defendant if he " 'might have a minute of his time' " and the defendant agreed. (*Id.* at p. 781.) Then the officer told the defendant he was conducting a narcotics

12

investigation, " 'and that we had received information that he would be arriving today from Florida carrying a lot of drugs.' " (*Ibid.*, italics & fn. omitted.) The California Supreme Court concluded the defendant was detained when the officer accused him of transporting narcotics because a reasonable person, when confronted by a narcotics officer and accused of importing illegal drugs, would not feel free to leave the encounter. (*Id.* at pp. 790-791.)

*Wilson* is distinguishable. Here, Officer Stonebreaker did not accuse appellant of committing a crime. He simply asked appellant general questions about his name and date of birth. That Officer Stonebreaker asked appellant whether he was on probation or parole and whether he possessed anything "illegal" does not make this situation similar to the one in *Wilson*, where the police officer followed the defendant and told him he was under suspicion of transporting narcotics.

Nor did the fact that the officers performed a warrant check transform the encounter into a detention. (*People v. Bouser* (1994) 26 Cal.App.4th 1280, 1284 (*Bouser*).) *Bouser* is instructive. In that case, the police officer — who was in his patrol car — approached the defendant after observing him in an alleyway known for drug trafficking. The officer parked his vehicle, walked up to the defendant, who was walking away, and asked to speak with the defendant. The defendant stopped and allowed the officer to speak with him. The officer asked the defendant general information questions, such as his name, date of birth, and prior arrest history. (*Id.* at p. 1282.) The officer then used this information to fill out "a field interview card" and radioed to check for outstanding warrants. (*Ibid.*) He did not tell the defendant he was checking for warrants, but the defendant was close enough to hear the officer on his radio. The records check revealed an outstanding traffic warrant, which was relayed to the officer 10 minutes after his initial contact with the defendant. (*Id.* at pp. 1282-1283.)

The *Bouser* court concluded that under the totality of the circumstances, the check for outstanding warrants did not strip this citizen/police encounter of its consensual character. (*Bouser, supra,* 26 Cal.App.4th at p. 1287.) In doing so, the court acknowledged, that when considered in light of the officer's questioning, "it is reasonable

13

to presume the check alerted Bouser he was somehow being investigated" and that he "reasonably may have felt the subject of general suspicion." (*Ibid.*) Nevertheless, the court found it significant that "neither the questioning nor the warrant check related to specific and identifiable criminal activity. Moreover, [the officer] did not order Bouser to do anything or turn over anything to him to hold while the brief check was completed. Nor did [the officer] draw his weapon, make any threatening gestures, or utilize his car's lights or siren." (*Ibid*.)

The same is true here. The warrant check did not convert the encounter into a detention. Here, Officer Stonebreaker asked questions about appellant's identity and criminal background while Officer Evans performed a warrant check that took three minutes. The questioning did not relate to "specific and identifiable criminal activity" and neither officer drew a weapon, made a threatening gesture, or commanded appellant to do anything. (*Bouser, supra,* 26 Cal.App.4th at p. 1287.) We conclude the trial court properly denied appellant's motion to suppress.

II. *The Court Erred in Denying Discovery of Officer Stonebreaker's Felony and Misdemeanor Convictions Involving Moral Turpitude, if Any*\*

Appellant contends he "had a right to discovery of Officer Stonebreaker's criminal history" under *Pitchess*, *Brady* and Penal Code section 1054.1.[7] In response, the People

---

\*  See footnote, *ante*, page 1.

[7]  As stated above, the court conducted an in camera hearing pursuant to *Pitchess* and reviewed Officer Stonebreaker's personnel file and a record of the police department's investigation of complaints and investigations "for dishonesty in terms of falsifying information." At appellant's request, we have reviewed the sealed transcript of the in camera hearing. The custodian of records brought Officer Stonebreaker's personnel file and the "Internal Affairs Complaints Investigations" to the in camera hearing. The court placed the custodian under oath, described the contents of the personnel file and the Internal Affairs Complaints Investigations, and reviewed them. We conclude the record is adequate to determine whether Officer Stonebreaker's files contained matters related to acts of moral turpitude. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229.) We also conclude the court followed the procedure outlined by the California Supreme Court for *Pitchess* motions and did not abuse its discretion by ordering the disclosure of one complainant. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286.) As we explain, however, the court abused its discretion by declining to order the prosecution to search

14

contend: (1) Officer Stonebreaker's rap sheet was not discoverable; (2) the City represented neither it nor the Richmond Police Department possessed "criminal history relating to Officer Stonebreaker"; (3) appellant's final request for Officer Stonebreaker's rap sheet did not comply with "*Pitchess* or Evidence Code sections 1043 and 1045"; and (4) there was no *Brady* violation in part because the evidence was not favorable and material.

As a matter of due process, a defendant is entitled to discovery of all material exculpatory evidence, including impeachment evidence. (*Strickler v. Greene* (1999) 527 U.S. 263, 280-281; *Brady, supra,* 373 U.S. 83; *People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1314.) Such exculpatory evidence includes any misdemeanor misconduct involving moral turpitude disclosed in a witness's rap sheet, as well as information relating to whether the witness has pending criminal charges and whether he is on probation. (*People v. Santos* (1994) 30 Cal.App.4th 169, 178-179 (*Santos*); *Hayes, supra,* 3 Cal.App.4th at p. 1244.) Additionally, Penal Code section 1054.1 provides "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] . . . [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial."

The People correctly note rap sheets themselves are not discoverable. (*People v. Roberts* (1992) 2 Cal.4th 271, 308 (*Roberts*); *Hill v. Superior Court* (1974) 10 Cal.3d 812, 821.) While the prosecution need not disclose Officer Stonebreaker's actual rap sheet, it must disclose the record of a felony conviction and any misdemeanor conviction involving moral turpitude. (*Santos, supra,* 30 Cal.App.4th at pp. 178-179 [applying *People v. Wheeler* (1992) 4 Cal.4th 284, 295-296, and concluding misdemeanor misconduct involving moral turpitude must be disclosed "when such information is requested by the defendant and is in the prosecutor's possession"]; *Roberts*, at p. 308

for and produce records of Officer Stonebreaker's criminal history, if any, and that the error was prejudicial.

15

[court erred as a matter of state procedural law by failing to order disclosure of all felony convictions to the defense].)  The People concede as much when they state "appellant did have the right to information relating to [Officer Stonebreaker's] convictions of any felon[ies] or misdemeanors involving moral turpitude" if the information was " 'reasonably accessible' to the prosecutor."

Here, "[n]ot only does the prosecutor have reasonable access to rap sheets, he is the assigned doorkeeper.  Since the prosecutor has reasonable access to rap sheets, and he has 'possession' under [*In re Littlefield* (1993) 5 Cal.4th 122], . . . a prosecutor shall on a standard discovery request inquire of 'the existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial.' " (*People v. Little* (1997) 59 Cal.App.4th 426, 432-433, quoting Pen. Code, § 1054.1, subd. (d)].)  In addition, "the birth date of a police officer is covered by Penal Code section 832.8 and can be discovered only by means of a *Pitchess* motion." (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 401-402.)

As in *Roberts*, we conclude appellant "showed good cause to discover" Officer Stonebreaker's applicable felony and misdemeanor convictions, if any.  (*Roberts, supra,* 2 Cal.4th at p. 308.)  Defense counsel's declaration in support of the original discovery motion averred appellant did not possess narcotics and did not toss a baggie containing cocaine base on the day of the incident.  The declaration also stated Officer Stonebreaker had a tendency to initiate detentions without reasonable suspicion and to fabricate incident reports.  Finally, defense counsel stated the prosecution possessed Officer Stonebreaker's criminal history.  We also conclude, particularly because the People do not contend otherwise, that the disclosure of this information "[would] not impair a legitimate governmental interest." (*Ibid.*)  Accordingly, the court abused its discretion in failing to allow discovery of Officer Stonebreaker's felony convictions, and misdemeanor convictions involving moral turpitude, if any. (*Roberts,* at p. 308; *Santos, supra,* 30 Cal.App.4th at p. 179; *Hayes, supra,* 3 Cal.App.4th at pp. 1245-1246.)

*Hustead* is instructive.  There, the defendant charged with evading arrest and resisting arrest moved for discovery, claiming "the police report contained material

misstatements and that the officer used excessive force against [him]." (*Hustead*, *supra,* 74 Cal.App.4th at p. 415.) After the prosecutor moved to dismiss the resisting arrest charge, the trial court denied [the defendant's] discovery request. (*Id.* at pp. 415-416.) On appeal, the defendant argued the *Pitchess* "motion should have been granted with respect to whether the officer has a history of misstating or fabricating facts in his police reports." (*Hustead*, at p. 416.) The *Hustead* court agreed, and concluded the defendant made a showing of prejudice. As the court explained, "We are unable to conclude that there is a reasonable probability that the discovery sought in this case would have led to admissible evidence helpful to [the defendant] in his defense. [Citation.] There may not have been any complaints against [the officer] for the type of conduct [the defendant] sought. In that case, [the defendant] would not have been prejudiced because access to the officer's file would not have led to any admissible evidence at trial. However, we must consider the possibility that such evidence may exist." (*Id.* at p. 418.)

The *Hustead* court remanded the case to the trial court to conduct an in camera hearing on the discovery motion, noting that if there was no discoverable information, the judgment would be reinstated and affirmed. If there was discoverable information, the defendant would be given "an opportunity to determine if the information would have led to any relevant, admissible evidence that he could have presented at trial. [Citation.] If [the defendant] is able to demonstrate that he was prejudiced by the denial of the discovery, the trial court should order a new trial. If [the defendant] is unable to show any prejudice, then the conviction is ordered reinstated, and the judgment is ordered affirmed." (*Hustead, supra,* 74 Cal.App.4th at p. 418.])

As in *Hustead*, we cannot conclude the error was harmless on the record before us. Officer Stonebreaker's testimony was critical to the conviction, particularly because he was the only one who saw appellant throw the baggie. Officer Evans did not see appellant toss the baggie and appellant denied adjusting his pants and possessing cocaine base on the day of the incident. He claimed he could not reach his pants when he was handcuffed. Additionally, "we cannot determine whether there is any information

17

responsive to appellant's request or what its impact on [Officer Stonebreaker's] credibility would be." (*Hayes, supra,* 3 Cal.App.4th at p. 1246, fn. omitted.)

The People seem to contend any error was not prejudicial because "the record does not show a reasonable probability of a more favorable result for appellant." According to the People, "[t]his conclusion, of course, flows from the lack of evidence concerning the existence and nature of any convictions or other criminal history." We are not persuaded by this circular logic. There is a lack of evidence concerning the existence of Officer Stonebreaker's criminal history because the court did not order the prosecution to run Officer Stonebreaker's rap sheet. This is not a situation where the prosecutor stated it ran Officer Stonebreaker's rap sheet and found no discoverable information.

The People contend that if the court erred, the case may be remanded to the trial court to determine whether the prosecution had responsive information and, if so, whether the information was material. We accept the People's suggestion and reverse the judgment and remand to the trial court to determine whether, as of the date of trial, there was any information responsive to appellant's request; that the prosecution run Officer Stonebreaker's rap sheet as of the date of trial, to conduct an in camera hearing in accordance with *Pitchess* and produce records, if any, of his felony convictions and misdemeanor convictions involving moral turpitude. If there are no such records, the court should reinstate the judgment and consider appellant's ability to pay certain fees (see section III., below).

If there are records, "the trial court must evaluate the materiality of the evidence in light of the whole record and determine whether to grant a new trial." (*Hayes, supra,* 3 Cal.App.4th at p. 1246, fn. omitted; see also *Hustead, supra,* 74 Cal.App.4th at pp. 418-419; *People v. Coyer* (1983) 142 Cal.App.3d 839, 845.)

III. *If the Original Judgment Is Reinstated, the Health and Safety Code Section 11372.7 Drug Program Fee Must Be Reversed*

As stated above, the court imposed a drug program fee of $570 pursuant to Health and Safety Code section 11372.7, subdivision (a). Appellant contends the court erred by delegating the determination of his ability to pay this fee to the probation department. [8]

Subject to certain exceptions, Health and Safety Code section 11372.7, subdivision (a) requires defendants convicted of certain drug offenses to "pay a drug program fee in an amount not to exceed [$150] for each separate offense." (*People v. Corrales* (2013) 213 Cal.App.4th 696, 701 (*Corrales*).) The Health and Safety Code section 11372.7 drug program fee "is mandatory unless the defendant is unable to pay." (*People v. Clark* (1992) 7 Cal.App.4th 1041, 1050 (*Clark*).)

Pursuant to Health and Safety Code section 11372.7, subdivision (b), "[t]he court shall determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee. If the court determines that the person has the ability to pay, the court may set the amount to be paid and order the person to pay that sum to the county in a manner that the court believes is reasonable and compatible with the person's financial ability. In its determination of whether a person has the ability to pay, the court shall take into account the amount of any fine imposed upon that person and any amount that person has been ordered to pay in restitution. If the court determines

---

[8]   We ordered the parties to submit supplemental briefing on whether appellant forfeited this challenge by failing to object when the trial court imposed the fee. (See *People v. McCullough* (2013) 56 Cal.4th 589 (*McCullough*).) Having reviewed the supplemental briefing, we conclude *McCullough* does not bar appellant's claim. In *McCullough*, our high court held the defendant's failure to object to imposition of a jail booking fee under Government Code section 29550.2 forfeited a sufficiency of the evidence of ability to pay claim on appeal because "a court's imposition of a booking fee is confined to factual determinations." (*Id.* at p. 597.) Here, and in contrast to *McCullough*, appellant does not contend there is insufficient evidence of his ability to pay the drug program fee. He contends his sentence is unauthorized because the court improperly delegated the determination of his ability to pay to the probation department. This presents a question of law we may review in the absence of an objection in the trial court. (*Id.* at p. 594.)

19

that the person does not have the ability to pay a drug program fee, the person shall not be required to pay a drug program fee."

The trial court is not required to make an express finding of ability to pay the drug program fee. (See *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1516; *People v. Staley* (1992) 10 Cal.App.4th 782, 785.) Several appellate courts have presumed the trial court determined the defendant had the ability to pay the drug program fee when the record "does not suggest otherwise." (*Clark*, *supra*, 7 Cal.App.4th at p. 1050 ["[s]ince the record does not suggest otherwise, we presume the court found [the defendant] had the ability to pay"]; *Corrales, supra,* 213 Cal.App.4th at p. 702 ["[w]e presume the trial court determined [the] defendant was able to pay" the drug program fee].)

Here, we cannot presume the court found appellant had the ability to pay the drug program fee because the court explicitly stated the probation department would "do an analysis of [appellant's] ability to pay, and it will be set that way." By delegating the ability to pay finding to the probation department, the court failed to comply with Health and Safety Code section 11372.7, subdivision (b), which requires the court — not the probation department — to "determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee." We cannot, as the People urge, presume "the trial court will comply with Health and Safety Code section 11372.[7]" at some point in the future.

Neither does the record support an implied finding of ability to pay. (*Corrales, supra,* 213 Cal.App.4th at p. 702.) In *Corrales*, the trial court imposed the drug program fee but "did not orally impose any penalties or the surcharge on the . . . drug program fee." (*Id.* at p. 701.) The Second District Court of Appeal presumed the trial court had concluded the defendant had an ability to pay $150, but explained, "the total amount payable" — with penalties or the surcharge — was "not $150, but $540. The probation report contains no evidence of defendant's assets. The probation report states [the] defendant is an unemployed ex-convict. Thus, there is no substantial evidence [the] defendant has the ability to pay the drug program fee after it has been enhanced by the penalties and surcharge." (*Id.* at p. 702.) The *Corrales* court reversed the drug program

20

fee and remanded for the trial court to determine the defendant's ability to pay "in light of all of [the] defendant's financial circumstances." (*Ibid.*)

Here, as in *Corrales*, there is insufficient evidence to support an implied finding appellant has the ability to pay the drug program fee. The probation report does not recommend appellant pay the drug program fee, nor does it analyze his ability to pay such a fee. As described above, the probation report states appellant has no assets, is unemployed, and suffers from numerous health problems, including schizophrenia. Although appellant has a G.E.D. and possesses electrical, painting, and landscaping skills, he has no employment prospects and has physical limitations.

We conclude the court erred by delegating to the probation department the analysis of appellant's ability to pay the drug program fee. We also conclude the record does not support an implied finding of appellant's ability to pay the drug program fee. If the court reinstates the judgment in accordance with our opinion, it must "conduct a hearing concerning [appellant's] ability to pay the drug program fee in light of his total financial obligations." (*Corrales, supra,* 213 Cal.App.4th at p. 702.)

IV. *If the Original Judgment Is Reinstated, the Penal Code Section 987.8 Attorney Fees Must Be Reversed***

Next, appellant contends the trial court erred by ordering him to pay attorney fees of $500 under Penal Code section 987.8[9] without considering his ability to pay. We address this argument notwithstanding appellant's failure to object at the sentencing hearing, in part because the People do not argue forfeiture. (See *People v. Verduzco* (2012) 210 Cal.App.4th 1406, 1421 (*Verduzco*); *People v. Viray* (2005) 134 Cal.App.4th 1186, 1214 ["unless the defendant has secured a new, independent attorney when such an order is made, [her or] she is effectively *unrepresented* at that time, and cannot be vicariously charged with her erstwhile counsel's failure to object to an order reimbursing his own fees"].)

---

*  See footnote, *ante*, page 1.

9  Unless noted, all further undesignated statutory references are to the Penal Code.

21

"In California, the statutory procedure for determining a criminal defendant's ability to reimburse the county for the services of court-appointed counsel is set forth in section 987.8."[10] (*People v. Phillips* (1994) 25 Cal.App.4th 62, 76, fn. omitted (*Phillips*).) Under section 987.8, subdivision (e), the determination that a defendant has the present ability to pay is a prerequisite to entry of an order requiring payment of attorney fees. The finding of ability to pay may be express or implied, as long as it is supported by substantial evidence. (*People v. Lopez* (2005) 129 Cal.App.4th at p. 1508, 1537; *Phillips*, at p. 71.)

" 'Ability to pay' means the overall capability" of the defendant to reimburse all or a portion of the defense costs. (§ 987.8, subd. (g)(2).) Ability to pay requires consideration of the defendant's financial position at the time of the hearing, his "reasonably discernible" financial position over the subsequent six months, including the

---

[10] Section 987.8, subdivision (b) provides in relevant part: "In any case in which a defendant is provided legal assistance, . . . upon conclusion of the criminal proceedings in the trial court, . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof. The court may, in its discretion, hold one such additional hearing within six months of the conclusion of the criminal proceedings. The court may, in its discretion, order the defendant to appear before a county officer designated by the court to make an inquiry into the ability of the defendant to pay all or a portion of the legal assistance provided."

Section 987.8, subdivision (d) provides: "If the defendant, after having been ordered to appear before a county officer, has been given proper notice and fails to appear before a county officer within 20 working days, the county officer shall recommend to the court that the full cost of the legal assistance shall be ordered to be paid by the defendant. The notice to the defendant shall contain all of the following: [¶] (1) A statement of the cost of the legal assistance provided to the defendant as determined by the court. [¶] (2) The defendant's procedural rights under this section. [¶] (3) The time limit within which the defendant's response is required. [¶] (4) A warning that if the defendant fails to appear before the designated officer, the officer will recommend that the court order the defendant to pay the full cost of the legal assistance provided to him or her."

Section 987.8, subdivision (e) provides in relevant part: "If the court determines that the defendant has the present ability to pay all or a part of the cost, the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability. . . ."

likelihood of employment during that time, and "[a]ny other factor or factors which may bear upon the defendant's financial capability to reimburse the county." (§ 987.8, subds.(g)(2)(A)-(D).)

Here, the court did not make an express finding of appellant's ability to pay the attorney fees. Instead, it ordered appellant to report to a county office for consideration of his ability to pay.[11] The court, however, did not order appellant to pay $500 in attorney fees *only if* the Probation Collection Unit determined he was able to pay, nor did the court indicate the attorney fees order was conditioned upon such a finding. Because the court entered an unconditional attorney fees order, we must consider whether substantial evidence supports an implied finding appellant has the ability to pay.

The answer is no. Substantial evidence does not support an implied finding that appellant has the ability to pay. Although the probation report indicated appellant had been employed in the past and had some employable skills, it also reported he was not employed at the time of the offense, had not worked in several years, and had no assets. "The specific language of section 987.8 expressly requires a finding of *present ability* to pay for defense costs." (*People v. Nilsen* (1988) 199 Cal.App.3d 344, 350.) That appellant may have been employed in the past does not constitute substantial evidence of his *present* ability to pay attorney fees. Because the court may not consider a period

---

**11** The court's written order concerning attorney fees is a preprinted form. It states: "[A] county officer will interview you to determine if you are able to pay all or part of the services of the attorney appointed by the Court to handle your case. If the Probation Collection Unit finds that you are able to pay a certain amount, and you do not agree, you have the right to a hearing in this Court to decide what amount, if any, you must pay. At the hearing you will have the right to: (i) be heard in person, (ii) present witnesses and other documentary evidence, (iii) confront and cross-examine adverse witnesses, and (iv) have the evidence against you disclosed to you. You are also entitled to have a copy of any written recommendation of the county officer and a written statement of any findings of the court. [¶] If you do not go to the Probation Collection Unit, as ordered, you waive (give up) your right to a hearing, and the Court will enter a judgment against you, ordering you to pay for the services of your attorney." Appellant signed the order, indicating that he "acknowledge[d] receipt of the above order and under[stood] that if [he did] not report as ordered, the court [would] enter a judgment against [him] for the total costs of legal services of [his] attorney."

beyond six months after the hearing in determining a defendant's present ability to pay (§ 987.8, subd. (g)(2)(B)), appellant's three-year jail term strongly suggests an inability to pay.

We conclude there was insufficient evidence before the trial court of appellant's present ability to pay attorney fees.[12]  If the original judgment is reinstated in accordance with our opinion, the attorney fee order must be reversed.  On remand, the court must make a determination under section 987.8 of appellant's ability to pay.  (*Prescott, supra,* 213 Cal.App.4th at p. 1476 ["Since the trial court failed to consider [the defendant's] ability to pay as required by section 987.8, we remand the matter for a new hearing."]; *Verduzco*, *supra,* 210 Cal.App.4th at p. 1421 [no substantial evidence of ability to pay section 987.8 attorney fees where trial court did not conduct a hearing].)

## DISPOSITION

The judgment is conditionally reversed with directions to the trial court to: (1) order the prosecutor to run Officer Stonebreaker's rap sheet as of the date of trial; (2) conduct an in camera review in accordance with the procedures set forth in *Pitchess*; and (3) disclose Officer Stonebreaker's felony convictions or misdemeanor convictions involving moral turpitude, if any.  If there are such convictions, the court must evaluate the evidence in light of the entire record and determine whether to grant appellant a new trial.  (See *Hayes, supra,* 3 Cal.App.4th at p. 1246; *Hustead, supra,* 74 Cal.App.4th at p. 419.)  If there are no such convictions, the court will reinstate the original judgment.

If the original judgment is reinstated, the Health and Safety Code section 11372.7 drug program fee is reversed.  On remand, the trial court is to determine appellant's ability to pay the drug program fee together with the other fines, fees, and assessment in light of all of appellant's financial circumstances.  If appellant has the ability to pay, the drug program fee is to be reinstated.  If the original judgment is reinstated, the Penal

---

[12]  We reject appellant's suggestion that he was presumptively unable to pay attorney fees pursuant to section 987.8 subdivision (g)(2)(B).  (*People v. Prescott* (2013) 213 Cal.App.4th 1473, 1476 (*Prescott*) [statutory presumption that prisoner cannot reimburse costs of defense did not apply to defendant sentenced to jail under the Realignment Act (§ 1170, subd. (h)(5)(B))].)

Code section 987.8 attorney fee order is also reversed. On remand, the court must determine appellant's ability to pay attorney fees in accordance with Penal Code section 987.8. If appellant has the ability to pay the attorney fees, the order imposing attorney fees will be reinstated.

In all other respects, the judgment is affirmed.

_____

Jones, P. J.

_____

Simons, J.

_____

Needham, J.

Superior Court of Contra Costa County, No. 05-110237-5, Thomas M. Maddock, Judge.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.