[No. A036866. First Dist., Div. Two. Mar. 8, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
VANCE HENRY NILSEN, Defendant and Appellant.

**COUNSEL**

Kent A. Russell, under appointment by the Court of Appeal, for Defendant and Appellant.

James P. Fox, District Attorney, and Milton H. Mares, Deputy District Attorney, for Plaintiff and Respondent.

## OPINION

**ROUSE, J.**—Vance Henry Nilsen (Nilsen) appeals from an order entered pursuant to Penal Code section 987.8, granting the People's motion for reimbursement of defense costs in the amount of $88,352 71.[1] We reverse.

On April 30, 1984, Nilsen was arraigned on a charge of first degree murder. Initially he was represented by retained counsel. On February 15, 1985, pursuant to Nilsen's representation to the court that he could no longer afford retained counsel, his previously retained counsel was appointed to represent him under the Private Defender Program of San Mateo County. Following a trial by jury from July 22 through August 16, 1985, Nilsen was convicted of the charge. An appeal from the judgment of conviction in that case resulted in affirmance by this court in an unpublished opinion filed February 24, 1988. We take judicial notice of the record in that proceeding (*People* v. *Nilsen,* A032808) pursuant to Evidence Code sections 452, subdivision (a) and 459, subdivision (a). That record discloses that on September 11, 1985, Nilsen was sentenced to state prison for the term of life without possibility of parole.

On May 1, 1986, the People's motion for reimbursement of defense costs pursuant to section 987.8 came on for hearing. Subdivision (a) of that section provides in relevant part: "In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof." "If the court determines that the defendant has the present ability to pay all or a part of the cost, the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability. . . ." (§ 987.8, subd. (d).) "Ability to pay" means the overall capability of the defendant to reimburse all or a portion of the costs and includes a consideration of his present financial position, his reasonably discernible future financial position (considering a period of no more than six months from the date of the hearing for this purpose), the likelihood that the defendant shall be able to obtain employment within a six-month period, and any other factor bearing upon the defendant's financial capability to reimburse the county. (§ 987.8, subd. (f)(2).) Additionally, "[u]nless the court finds unusual circumstances, a defendant sentenced to state prison shall be determined not to have a

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

reasonably discernible future financial ability to reimburse the costs of his or her defense." (§ 987.8, subd. (f)(2)(B).)

An evidentiary hearing was held on May 1, May 21, and August 20, 1986. On September 15, 1986, the trial court filed its order providing for reimbursement by Nilsen to the County of San Mateo of defense costs in the amount of $88,352.71. This timely appeal followed.

Nilsen first contends that he was not provided with sufficient notice of his potential liability for reimbursement of defense costs, as required by section 987.8, subdivision (e), and due process. Subdivision (e) provides: "Prior to the furnishing of counsel or legal assistance by the court, the court shall give notice to the defendant that the court may, after a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost of counsel. The court shall also give notice that, if the court determines that the defendant has the present ability, the court shall order him or her to pay all or a part of the cost. The notice shall inform the defendant that the order shall have the same force and effect as a judgment in a civil action and shall be subject to enforcement against the property of the defendant in the same manner as any other money judgment."

The only evidence that Nilsen was given such notice is that at his arraignment in the municipal court on April 30, 1984, while Nilsen was represented by retained counsel, the judge read this notice to the defendants sitting in the courtroom en masse. The assistant district attorney who attended the arraignment testified that Nilsen was present in the courtroom when this notice was given. Nilsen testified that he had never heard such notice. It is undisputed that Nilsen was not given this notice at the time counsel was appointed in the superior court on February 15, 1985. ▪▪▪ We need not resolve Nilsen's claim regarding adequacy of notice, however, since we conclude that the trial court's determination that Nilsen had the present ability to reimburse the county is not supported by substantial evidence. (See *People* v. *Kozden* (1974) 36 Cal.App.3d 918, 920 [111 Cal.Rptr. 826] ["We conclude the appeal may be resolved without reference to constitutional issues [regarding section 987.8] because there is no substantial evidence to support the trial court's determination that (the defendant) possessed the *present ability* to pay the sum assessed, or any other sum."].)

Nilsen was called as an adverse witness by the prosecution pursuant to Evidence Code section 776. He testified that at the time counsel was appointed for him in February 1985 he had total indebtedness of approximately $100,000. He stated that when the judge asked him whether he had the ability to pay for counsel, he assumed that the question was whether he had any money or the ability to borrow any money and he had neither. He did

not tell the court that he had an action for wrongful termination of employment pending.

Nilsen's wrongful termination action was settled on August 8, 1985, while his criminal trial was in progress. He received $95,000 gross in the settlement. A provision of the settlement was that its terms would be kept confidential. Nilsen did not disclose to the superior court that he had received funds through this settlement. Both Nilsen and his counsel at the section 987.8 hearing (counsel who had been his attorney in the wrongful termination action) stated that the San Francisco Chronicle had carried an item regarding the fact that the wrongful termination action had been settled. Nilsen testified that he had never attempted to hide any assets from the court.

Nilsen testified that his attorney in the wrongful termination action received the settlement funds and issued a check to Nilsen's sister, who was to use the money to pay off some of his debts, including attorney's fees, bail money, house payments and miscellaneous obligations. Nilsen stated that no funds remained from the settlement, except possibly a checking account containing $20 to $25, and that he had no other assets whatsoever. At the time of the hearing, he was working for the chaplain at Folsom, earning $24 per month. He had no anticipation of any other employment within the following six months.

Nilsen was also questioned about the sale of two homes which he had owned. A house in Hayward which he had owned with his former wife was sold in June of 1985 and netted approximately $18,000. Pursuant to court order in a dissolution proceeding, $13,000 of these proceeds were awarded to his former wife and the remainder was placed in a trust account for his children. A house which Nilsen had owned in Union City was sold in early 1986. He testified that the net proceeds were approximately $10,000 and were given to his mother as partial payment of a debt of approximately $20,000 which he owed to her.

Nilsen's sister testified that she received $93,260 from Nilsen's attorney in the wrongful termination action on August 27, 1985. She stated that he told her that, pursuant to "instructions from the settlement," she was not to tell anybody about the money. She and her husband deposited the funds in a separate account in their bank in Arizona, and then distributed the funds between October 1985 and March 1986 in accordance with instructions of her brother, who had told her he wanted debts paid and money set aside for the appeal of his criminal conviction. She brought the records of this bank account to the hearing and they were admitted into evidence.

Nilsen's sister and her husband first paid themselves $2,500 on a $13,000 loan which they had made to Nilsen out of their savings to help with his defense costs. This loan had been evidenced by a promissory note signed by Nilsen's mother who held a power of attorney for him. On October 8, 1985, $70,000 was withdrawn from the account. Thirty thousand dollars was paid to the father-in-law of Nilsen's sister as repayment of $25,000 plus interest which he had loaned Nilsen for bail money. This loan had been evidenced by a promissory note signed by Nilsen's mother as his attorney in fact. Twenty thousand dollars was sent to Nilsen's mother to be used for appellate attorneys' fees. An additional $20,000 was delivered to the father-in-law of Nilsen's sister as an investment since he was willing to pay a higher rate of interest than the bank. These funds were later wired to Nilsen's mother and used for further appellate attorneys' fees.

On October 22, 1985, Nilsen's sister withdrew $200 for her plane fare to come to the Bay Area to interview prospective appellate attorneys for her brother. On November 12, $1,500 was sent to Nilsen's mother, and on December 10, another $3,000 was sent to her. On February 11, 1986, Nilsen's sister and her husband paid themselves an additional $5,600 on the outstanding loan to her brother. On March 18, 1986, they closed the account, as they were about to move from Arizona to the Bay Area, sending the balance of $11,815.33 to Nilsen's mother. The distributions made by Nilsen's sister totaled $94,115.33, which apparently represented the $93,260 plus accrued interest.

Nilsen's mother testified that she had made various payments on her son's behalf, primarily with the funds sent to her by Nilsen's sister from the wrongful termination settlement proceeds. Forty thousand dollars was paid to Andrew Parnes of the law firm of Nolan and Parnes for appellate attorneys' fees. Loans which had been made to Nilsen by various family members to help with legal expenses were repaid, including $14,000 to his father; $6,400 to his current wife; $2,000 to his brother; and $1,000 to his grandmother. Nilsen's mother paid herself $16,272 as reimbursement for various expenditures she had made from her own money on her son's behalf, including mortgage payments, insurance payments and miscellaneous expenses. Eleven thousand, two hundred and seventy-two dollars of that amount represented the net proceeds of the sale of his house in Union City. Additionally, a tithing of $1,000 was paid to Bethel Baptist Church on his behalf. Nilsen's mother testified that the total of her son's debts paid by her and paid directly by his sister was $107,400. She also testified that at the time of the hearing he had remaining debts of approximately $40,000 to $45,000 and that she had no assets belonging to him.

On the second day of the hearing, May 21, 1986, Andrew Parnes testified that he was Nilsen's retained counsel on appeal and had been retained in

December 1985. He stated that an initial retainer of $20,000 had been paid to him and that he had been paid an additional $20,000 some time within the three months preceding the hearing. He stated that the briefing on appeal had not yet been done. The trial court met with Mr. Parnes in camera to discuss how much of his retainer had actually been earned at that point.

On the final day of the hearing, August 20, 1986, counsel stipulated that the amount expended by San Mateo County for Nilsen's defense costs was $88,352.71. At the conclusion of the hearing, the trial court issued an oral statement of decision. The court recognized that Nilsen's funds had been expended on various debts. It held, however, that Nilsen had a duty to advise the court that he had a present ability to pay for counsel when he received the settlement proceeds in August 1985. The court also stated that the evidence from the May 21 hearing (apparently statements made by Parnes in camera) indicated that a substantial amount should be left in Parnes's trust account. The court concluded that Nilsen "does have the present ability to pay to the County of San Mateo something on account of the $88,000 bill which has been incurred. . . . And it is the judgment of this court that there is due to the County of San Mateo, the sum of $88,352.71."

The court's order, filed September 15, 1986, granted the motion for reimbursement of defense costs in the sum of $88,352.71. It also directed Andrew Parnes to submit a statement of account to the court advising how much money remained in his trust account for Nilsen as of August 20, 1986, and directing Parnes to transfer that sum of money to the district attorney's office. It directed the county to pay $1,000 from those funds to Nilsen's attorney in the wrongful termination action for his representation of Nilsen on the motion.

On September 12, 1986, Parnes filed a written report with the court stating that as of August 20, 1986, all funds placed in his trust account by Nilsen's mother had been expended and there was an outstanding bill of $179.64. We note that between the time Parnes testified at the hearing on May 21, 1986, and the date of the court's order, Parnes filed Nilsen's 152-page opening brief in the criminal appeal in this court on August 27, 1986.

■ The specific language of section 987.8 expressly requires a finding of *present ability* to pay for defense costs. "The section [987.8] requires that there be a finding of 'present' ability to pay." (*People* v. *McDowell* (1977) 74 Cal.App.3d 1, 4 [141 Cal.Rptr. 124].) "In arriving at the meaning of the words 'present ability' as used in the statute, we think it significant to note the word 'present' did not find its way into the statute by accident. As

originally framed in the Senate, the bill proposing the addition of the code section required only a determination of the defendant's 'ability' to pay for his attorney. The modifying word 'present' was inserted by amendment in the Assembly. [Citation.]" (*People* v. *Kozden, supra,* 36 Cal.App.3d 918, 921-922.) "Used as an adjective, the word 'present' connotes *now, existing, at hand.*" (*Id.,* at p. 922.)

■ It is clear from the evidence in this case that Nilsen had no ability to pay for defense costs at the time of the court's order and no discernible future ability to do so. While we understand the court's concern about the lack of disclosure of the wrongful termination settlement, and will comment upon that below, under the present statutory scheme the order cannot stand because there is no evidence of present ability to pay. "If there is no substantial evidence to support the judgment, it is erroneous as a matter of law." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 241, pp. 246-247.)

We feel compelled to express our concern with what appear to be loopholes in the statutory scheme and also our concern with the course of the proceedings in this particular case. There is presently no requirement in the statute that a change in a defendant's financial circumstances be disclosed to the court during the course of representation by court appointed counsel. Furthermore, there is no provision for any type of review of such circumstances between the time of the initial determination to appoint counsel and the conclusion of the proceedings. Indeed, the statute expressly provides that the hearing to determine ability to pay will occur "*upon conclusion* of the criminal proceedings in the trial court." (§ 987.8, subd. (a), italics added.) Until corrective amendments are enacted, the possibility of a defendant acquiring funds and expending them during the course of litigation without the knowledge of the trial court, and with apparent impunity, will continue to exist.

Another matter of concern here is whether Nilsen's counsel in the criminal case was aware of the settlement but failed to bring it to the attention of the trial court. The record before us does not disclose whether his attorney had such knowledge. Since the settlement occurred while the criminal trial was taking place and Nilsen and his counsel had daily contact, and there were apparently newspaper reports concerning the civil litigation, it would not be unlikely that he was aware of it. ■ In our view, if appointed counsel becomes aware of a significant change in a defendant's financial circumstances, he has a duty as an officer of the court to disclose that fact to the court. (Cf. ABA Model Rules Prof. Conduct, rule 3.3(a)(2) [CANDOR TOWARD THE TRIBUNAL, " A lawyer shall not knowingly: fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client"]; State Bar Rules Prof. Conduct,

rule 7-105 (1) [Trial Conduct, "In presenting a matter to a tribunal, a member of the State Bar shall: Employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth . . . ."].)

Finally, it appears that the People did not proceed in a very expeditious manner in this case. The criminal proceedings concluded on September 11, 1985, when Nilsen was sentenced. The vast majority of the expenditures from the settlement proceeds occurred between October 1985 and March 1986. Yet the People did not bring the motion for reimbursement of defense costs until May 1, 1986. Had the People acted sooner, some of the funds might have been available for payment to the County of San Mateo.

The order requiring reimbursement of defense costs is reversed.

Kline, P. J., and Benson, J., concurred.