Filed 11/22/13  P. v. Ugiley CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B244467 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA 070247) |
| v. | |
| LAMA UGILEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Alan Schneider, Judge.  Affirmed as modified.

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

A jury convicted appellant Lama Ugiley of vandalism causing over $400 in damage (Pen. Code, § 594, subds. (a), (b)(1))[1] and grand theft of personal property exceeding $950 in value (§ 487, subd. (a)).  The court sentenced her to 180 days in county jail but suspended imposition of sentence and placed her on probation for a period of three years.  She was ordered to make restitution in the stipulated sum of $24,845.  The court also determined appellant should pay $8,694 in attorney fees pursuant to section 987.8, subdivision (b).  Appellant argues the trial court erred in (1) instructing the jury with CALCRIM No. 318, (2) twice imposing a fine under section 1202.5, (3) ordering her to pay attorney fees without sufficient evidence of her present ability to pay, and (4) prohibiting her from testifying in her defense at the attorney fees hearing.  We affirm with one modification.

## STATEMENT OF FACTS

### 1.  Prosecution Evidence

Appellant rented an apartment in North Hollywood in a complex called Madison Toluca Luxury Apartment Homes.  In November 2011, appellant did not pay her rent, and the business manager for the apartment complex served her with a three-day notice to pay rent or quit.  After appellant did not pay in response to the notice, the landlord prevailed in an unlawful detainer action to evict appellant.  The landlord obtained a writ of possession dated January 3, 2012.  On January 11, 2012, appellant called the business manager, Teresa Cormier, and asked if she could pay her past due rent and stay in the apartment.  Cormier refused, and after appellant "went back and forth" with Cormier about it, Cormier told appellant she would have to ask Cormier's supervisor.  Appellant said that she would "fuck" up the apartment so that no one could live in it for a year if they did not let her stay.  After Cormier served appellant with the three-day notice to pay or quit, appellant threatened to kill Cormier.  Appellant also repeatedly called Cormier a "whore" and a "bitch," and told her, "You fucking bitch.  I know people."  James Villa

---

[1]     All further undesignated statutory references are to the Penal Code.

was the investment manager for appellant's landlord. Appellant called him and asked if she could pay to stay in the apartment. He refused. Appellant told Villa they "were going to regret evicting her" and she was going to damage the apartment. She said she did not care if she got into trouble because she was leaving the country.

On January 13, 2012, Cormier saw a moving truck outside appellant's apartment, and she heard loud banging noises coming from appellant's apartment for approximately 10 minutes that morning. Fausto Villatoro was a security guard the landlord hired to protect Cormier after appellant threatened her. He heard banging noises coming from appellant's apartment on three different days. Nelson Gonzalez, the maintenance person at the apartment complex, also heard loud banging noises coming from appellant's apartment for three to four minutes that day. Gonzalez saw the moving truck as well.

After appellant had vacated the apartment, Cormier entered with the sheriff's department and found the apartment heavily damaged. The apartment smelled like dog or cat urine and excrement, the carpet had black stains, the washer, dryer, refrigerator, stove, microwave, and dishwasher were missing, there were holes in multiple walls, the cabinets and granite countertops were broken, smoke detectors were missing, there was trash throughout the apartment, and fixtures were broken. A contractor submitted a bid of $35,455 to repair the apartment.

## 2. Defense Evidence

At the time of trial, appellant was self-employed selling furniture online through her company, Discount Furniture Inc. She worked from home. When she applied for her apartment in North Hollywood, she stated she sold cosmetics and earned approximately $200,000 per year.

When appellant was being evicted from her apartment, she rented a townhouse and obtained the key for it on January 4, 2012. She lied on the rental application for her new townhouse when she said she had never been evicted and identified her boyfriend as her landlord. She lied because she believed her old landlord was trying to set her up, and she wanted the townhouse as soon as possible. She moved everything on January 13, 2012, except her "work[] station" -- her computers and printers. She left her work station

3

because she did not have an Internet connection in her townhouse until February. She left the apartment undamaged and all appliances still there.

Lee Murreta is the mover who helped appellant move. He moved furniture and boxes for her, but no appliances. He did not see any damage to the apartment when he moved her things. Mohammed Isa is appellant's friend and Samy Alujiely is her brother. They also helped her move. They did not take any appliances and did not see any damage to her apartment.

Appellant returned to her old apartment on January 17, 2012, to use her work station. When she arrived, she found the apartment "destroyed" and her work station missing. She reported the vandalism and theft to the police.

## DISCUSSION

### 1. *CALCRIM No. 318*

The court instructed the jury with CALCRIM No. 318 as follows: "You have heard evidence of statements that a witness made before the trial. If you decide that the witness made those statements, you may use those statements in two ways: [¶] 1. To evaluate whether the witness's testimony in court is believable; [¶] AND [¶] 2. As evidence that the information in those earlier statements is true." Appellant contends this instruction relieved the prosecution of its burden of proof and violated her due process and fair trial rights because it "allows for the improper presumption that a witness's unsworn out-of-court statements are both true and deserving of greater belief than statements made in court under penalty of perjury." Appellant points to evidence that Villa made an out-of-court statement that appellant said she would damage the apartment if evicted. This was consistent with Villa's in-court testimony that appellant told him she would damage the apartment. Appellant argues CALCRIM No. 318 "proclaimed the truth of Villa's out-of-court statement," gave weight to Villa's in-court statement because it was consistent, and precluded the jury from considering further whether Villa's statements were false. We disagree that this instruction was improper.

Preliminarily, we note appellant did not object to this instruction at trial. We will nevertheless address the merits of her contention because she argues the claimed error

4

affected her "substantial rights." (§ 1259 ["The appellate court may . . . review any instruction given, . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby."]; *People v. Solorzano* (2007) 153 Cal.App.4th 1026, 1038.) We conduct an independent review of issues relating to instructions. (*People v. Cooksey* (2002) 95 Cal.App.4th 1407, 1411.)

Turning to the merits, we are not persuaded by appellant's argument. The court rejected the same argument regarding CALCRIM No. 318 in *People v. Hudson* (2009) 175 Cal.App.4th 1025 (*Hudson*). We agree with the reasoning in *Hudson*. By instructing the jurors that they "may" use a witness's out-of-court statements "if" they decide the witness made those statements, the instruction does not *require* the jurors to credit the out-of-court statements. (*Id.* at p. 1028.) Like the *Hudson* court, we therefore reject the argument that the instruction lessens the prosecution's burden of proof by compelling the jurors to accept out-of-court statements as true. (*Ibid.*) Moreover, we determine the correctness of the instruction by looking at the instructions as a whole, not just particular instructions or parts of them. (*Ibid.*) Here, the instructions as a whole properly informed the jury of its prerogative to determine that Villa's statements were false while appellant's were true. (*Id.* at p. 1029.) Using CALCRIM No. 220, the court instructed that the prosecution had to prove its case beyond a reasonable doubt, and in deciding whether it had done so, the jurors had to "impartially compare and consider all the evidence that was received throughout the entire trial." Further, the court instructed the jurors with CALCRIM No. 302 that if there was a conflict in the evidence, they "must decide what evidence, if any, to believe." And specifically with respect to evidence of appellant's out-of-court statements, the court instructed them with CALCRIM No. 358 to "[c]onsider with caution any statement made by the defendant tending to show her guilt unless the statement was written or otherwise recorded." Thus, far from telling the jurors to credit Villa's statements, the instructions expressly told the jurors to consider with caution Villa's testimony that appellant said she would damage the apartment. The instructions as a whole fully allowed the jury to reject Villa's statements and "did not lessen the prosecution's burden of proof by elevating out-of-court statements to

5

unquestionable reliability." (*Hudson, supra*, 175 Cal.App.4th at p. 1029.) The trial court did not err in giving CALCRIM No. 318.

## 2. Section 1202.5 Fine and Additional Assessments

Appellant contends the trial court erroneously imposed two $10 crime prevention fines under section 1202.5, one for each offense of which she was convicted. Respondent concedes the court may impose the crime prevention fine only once in a case, and we agree. (See, e.g., *People v. Crittle* (2007) 154 Cal.App.4th 368, 371 ["[W]e agree with defendant that one of the fines was unauthorized because the crime prevention fine can be imposed only once '[i]n any case.'"].)

As respondent points out, the court stated at the sentencing hearing it was imposing the fine "for both counts," but the minute order of the hearing states the fine was imposed only once, and there is no abstract of judgment because the court placed appellant on probation. The record of the oral pronouncement of the court generally controls over the clerk's minute order when the two conflict. (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.) But in this case, the clerk's minute order is correct under the law, and the oral pronouncement is incorrect. Under these circumstances, we will deem the minute order to prevail over the transcript. (*People v. Cleveland* (2004) 32 Cal.4th 704, 768.) The erroneous imposition of a second fine under section 1202.5 in the reporter's transcript is of no effect. (*Ibid.*)

While respondent concedes the crime prevention fine should not have been twice imposed, it contends the court failed to impose additional mandatory assessments. Appellant has no response to this argument. We agree with respondent. "The $10 obligation pursuant to Penal Code section 1202.5(a) is a criminal fine," and the Legislature has expressly provided seven additional assessments, surcharge, and penalties must be added to any criminal fine. (*People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1109.) These seven additional sums are (1) the $10 Penal Code section 1464, subdivision (a)(1) penalty assessment; (2) the $7 Government Code section 76000, subdivision (a)(1) penalty assessment; (3) the $2 Government Code section 76000.5, subdivision (a)(1) penalty assessment; (4) the $2 Penal Code section 1465.7, subdivision (a) state surcharge;

(5) the $3 Government Code section 70372, subdivision (a)(1) state court construction penalty; (6) the $1 Government Code section 76104.6, subdivision (a)(1) DNA penalty; and (7) the $4 Government Code section 76104.7, subdivision (a) DNA state-only penalty. (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1529-1530.) "Because the seven additional assessments, surcharge, and penalties are mandatory, their omission may be corrected for the first time on appeal." (*Id.* at p. 1530.) The total sum of $29 should have been imposed for these seven mandatory sums. (*People v. Knightbent*, *supra*, at p. 1113.)

### 3. Attorney Fees

Appellant argues insufficient evidence supported the court's finding that she had the ability to pay $8,694 in attorney fees. We disagree.

### a. Background

At trial in September 2012, appellant testified she had her own online business selling furniture. She started living in her North Hollywood apartment in January 2010. On her rental application, she had stated she earned $200,000 a year selling cosmetics. In January 2012, police arrested her for making criminal threats against Cormier. When they asked her why she was not paying her rent, she told them she could "own the building" if she wanted it. When she rented the townhouse in January 2012, she paid $6,000 down. The townhouse was a three-story residence that was a little over two times the size of her old apartment.

At the ability to pay hearing in March 2013, appellant requested and received permission to represent herself. She said she had a bachelor's degree in business from a Florida university but had not worked since 2007. The court noted she had testified otherwise under oath at trial, and said: "I'm not going to ask you anything further as to that because I don't want to place you in the position where you might incriminate yourself for testifying falsely under oath, so I'm just going to let it stay there ma'am. [¶] I'm cautioning you that it might not be in your interest to speak any further on that issue." Appellant also said she was living with her family. The court noted she had an apartment at the time of trial "in a very expensive location." When the court asked what she was

7

doing to seek employment, she said she was "seeing doctors because of [her] emotional status."

The court noted appellant had suggested she had the means to purchase her apartment building when she was arrested in January 2012, and further, she had stated on her rental application that she earned $200,000 a year. It also noted she was "impeccably dressed" at every court appearance and had "expensive jewelry, expensive watches, very expensive purses," and "designer-type glasses," indicating she was living "far above the average level" usually seen in the courtroom. Appellant responded that she was previously engaged to be married to the son of the King of Saudi Arabia, and her possessions were gifts from him. The court asked to see appellant's purse and observed it was a Christian Dior purse, asked to see her cell phone and observed it was an iPhone, and asked to see her car keys and observed she was driving a Mercedes. The court concluded it "disbelieve[d]" appellant's statements that she did not have the ability to pay attorney fees and ordered her to pay $8,694.

**b. Analysis**

"In any case in which a defendant is provided legal assistance, either through the public defender or private counsel appointed by the court, upon conclusion of the criminal proceedings in the trial court, . . . the court may, after notice and a hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof." (§ 987.8, subd. (b).) We review the trial court's finding that appellant had the ability to pay attorney fees for substantial evidence. (*People v. Phillips* (1994) 25 Cal.App.4th 62, 71-72.)

"'Ability to pay' means the overall capability of the defendant to reimburse the costs, or a portion of the costs, of the legal assistance provided to him or her, and shall include, but not be limited to, all of the following": (1) the defendant's present financial position; (2) the defendant's reasonably discernible future financial position, except the court shall not consider more than six months from the date of the hearing when discerning the defendant's future position; (3) the likelihood the defendant will be able to obtain employment within a six-month period from the date of the hearing; and (4) any

8

other factors that may bear upon the defendant's financial capability to reimburse the county.  (§ 987.8, subd. (g)(2).)

"If the court determines that the defendant has the present ability to pay all or a part of the cost, the court shall set the amount to be reimbursed and order the defendant to pay the sum to the county in the manner in which the court believes reasonable and compatible with the defendant's financial ability."  (§ 987.8, subd. (e).)

We hold sufficient evidence supported the finding that appellant had the ability to pay.  Appellant has a degree in business.  The evidence showed she had run her own business and had been fully capable of earning a comfortable living at the time of trial. When appellant said she had not worked since 2007, she contradicted (1) her sworn testimony six months earlier that she was running her own business, and (2) her rental application in or around 2010 in which she stated she earned $200,000 a year.  Even if she truly was unemployed at the time of the hearing, her education and previous work indicated she could likely obtain employment in the next six months and be in a position to contribute towards attorney fees.  Under section 987.8, these were factors on which the court could properly rely.  And if the court did not find appellant to be credible when she said she could not work and had no assets, that is not for us to reconsider.  The trial court, having observed appellant throughout trial and then at the ability to pay hearing, was in the best position to evaluate her credibility, and we will not disturb that determination. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

Appellant likens this case to *People v. Nilsen* (1988) 199 Cal.App.3d 344 (*Nilsen*), but that case is inapposite.  In *Nilsen*, the court ordered the defendant to pay over $88,000 in attorney fees, and the Court of Appeal reversed because there was not substantial evidence of the defendant's ability to pay.  (*Nilsen, supra*, 199 Cal.App.3d at pp. 346, 351.)  But the defendant in that case had been sentenced to *life in prison without the possibility of parole*, and he was earning only $24 per month working for the chaplain at the prison.  (*Id.* at p. 348.)  That defendant clearly had no "reasonably discernible future financial ability" to pay, and in fact, the statute expressly provides that, "[u]nless the court finds unusual circumstances, a defendant sentenced to state prison shall be

9

determined *not* to have a reasonably discernible future financial ability to reimburse the costs of his or her defense." (§ 987.8, subd. (g)(2)(B).) Appellant is not in the same position here.

Appellant also argues the court violated her constitutional rights to present a defense by preventing her from testifying when, after she said she had not worked since 2007, the court stated it would not ask anything further and cautioned her against saying anything further on that score. We are not persuaded. The court did not prevent her from presenting a defense. Appellant spoke on her own behalf at the hearing. The court heard her out. While the court cautioned her against incriminating herself for perjury, she was free to explain further, and she never attempted to do so. Moreover, the court's caution applied only to the one issue (the last time she worked) and not to her presentation of evidence as a whole. The court did not err.

## DISPOSITION

The trial court's order imposing a $10 crime prevention fine pursuant to section 1202.5 is modified to include $29 in additional assessments as follows: (1) the $10 Penal Code section 1464, subdivision (a)(1) penalty assessment; (2) the $7 Government Code section 76000, subdivision (a)(1) penalty assessment; (3) the $2 Government Code section 76000.5, subdivision (a)(1) penalty assessment; (4) the $2 Penal Code section 1465.7, subdivision (a) state surcharge; (5) the $3 Government Code section 70372, subdivision (a)(1) state court construction penalty; (6) the $1 Government Code section 76104.6, subdivision (a)(1) DNA penalty; and (7) the $4 Government Code section 76104.7, subdivision (a) DNA state-only penalty. So modified, the judgment is affirmed.


FLIER, J.

WE CONCUR:



BIGELOW, P. J.                    RUBIN, J.

10