Filed 4/29/16  P. v. Rea CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LUIS RANGEL REA,<br><br>        Defendant and Respondent. | A141738<br><br>(Sonoma County<br>Super. Ct. No. SCR-636673) |

A jury convicted defendant Luis Rangel Rea of rape of an intoxicated person in violation of Penal Code section 261, subdivision (a)(3).[1]  On appeal, he contends there was insufficient evidence to establish that the victim was prevented from resisting as a result of her intoxication, and he claims the trial court failed to comply with the procedural requirements of section 987.8 before requiring him to reimburse the public defender for his representation.  He also asks this court to independently review the record of a visit by the rape victim to a medical clinic to confirm that he was given all relevant, discoverable information.

We conclude the evidence was sufficient to show that the victim's intoxication prevented her from resisting as a result of being unable to exercise reasonable judgment at the time of the assault.  Having reviewed the records of the rape victim's visit to a clinic following the assault, we are satisfied that the court turned over potentially exculpatory information and that defendant was not prejudiced by the decision to

_____

[1]All further statutory references are to the Penal Code unless otherwise specified.

1

withhold the remainder of the records.  However, we agree with defendant that the court did not afford him notice and an opportunity to be heard on the question of whether he had the present ability to pay an order reimbursing the cost of his representation.  Because the record does not contain evidence sufficient to show that he had the present ability to pay, we shall reverse the attorney fee reimbursement order but otherwise affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

Jane Doe worked at a bar owned by Noe Espinoza.  Defendant was a regular patron at Espinoza's bar, and Espinoza considered defendant to be one of his best friends.  Doe first met defendant in 2012 when she began working at the bar.

On February 12, 2013, Doe went to dinner with defendant.  They each drank one glass of wine.  After dinner, they went to a bar, where Doe drank five or six shots of Don Julio tequila and a mixed drink.  Doe recalled dancing with friends and singing karaoke at the bar.  The next thing Doe remembered was waking up in her car sometime after 4:00 a.m. the following morning.  She was sitting in the driver's seat of the car, which was parked outside defendant's house.  Her leggings were pulled down around her knees, her bra was unhooked, and her boots were not on her feet.  She was not wearing any underwear although she had worn underwear the previous evening.  The car door was open and defendant was placing a blanket on her.

Doe drove home even though she was still intoxicated.  She went to the bathroom and saw discharge and felt soreness in her vagina consistent with having had sexual intercourse.  She thought that defendant had sex with her; she was shocked and confused because she considered him a friend.  She and defendant had never engaged in sexual intercourse before.

Later that day, Doe went to a clinic to be tested for sexually transmitted diseases and to get a "morning after pill."  Although Doe testified that she went to the clinic because she felt she had been abused, she admitted telling medical personnel at the clinic that she did not feel she had been taken advantage of or that she had been in an unsafe environment the night before.  Doe explained at trial that she was confused at the time

2

and considered defendant a friend who would not take advantage of her or sexually abuse her.

Doe contacted defendant on multiple occasions and repeatedly asked him if he had sexually abused her. He always denied it.

Doe's boss, Espinoza, testified that on the night of February 15 or 16, he closed the bar and was in his car with defendant, whom he had offered to drive home. Defendant had consumed about 10 beers that evening and was intoxicated. Espinoza could see that Doe was in the car next to them. After defendant made Espinoza swear that he would not tell anyone what he was about to divulge, defendant told Espinoza, "I fucked her." Espinoza understood defendant to be referring to Doe, because she was in the car next to them at the time and defendant was looking at her. Defendant told Espinoza that he had never been as scared in his life as he was when Doe was driving them to his house because she was extremely drunk at the time. He said she "was filled up with alcohol" and had driven her car the wrong way out of the parking lot, had run a red light, and had swerved side to side. According to defendant, Doe eventually blacked out in her seat.

Defendant told Espinoza that Doe had been coming on to him. Espinoza testified that it would not have been like Doe to engage in such behavior with defendant. Defendant also told Espinoza that when Doe asked what happened and repeatedly asked if they had sex, he responded by denying that they had sex and swore on his daughter's life that they had not done anything.

On the Sunday after defendant had told Espinoza about his encounter with Doe, Espinoza noticed that Doe was acting "spaced out" at work and was not talking to customers. When he spoke to Doe she said something had happened with a customer but she did not identify the customer, although Espinoza realized she must have been referring to defendant.

Espinoza later received a text message from defendant in which defendant referred to Don Julio tequila and wrote, "that's how they give it up for bitches like [Doe]." He

3

also wrote, "That is how [Doe] gave it up with that tequila," and then, "It is the best thing so they can give it up because the next day they don't remember."

Doe reported the incident to police on February 18, 2013.  It was only after reporting the incident that Doe told Espinoza the identity of the customer she had referred to earlier when she was acting strangely.

The Sonoma County District Attorney filed a two-count information charging defendant with rape of an intoxicated person (§ 261, subd. (a)(3)) and rape of an unconscious person (§ 261, subd. (a)(4)).  Following a jury trial, defendant was found guilty of the charge of rape of an intoxicated person but was acquitted of the remaining charge.

The trial court denied probation and sentenced defendant to serve three years in state prison.[2]  The court also ordered defendant to pay $1,000 toward the cost of his representation by the public defender.  Defendant timely appealed.

## DISCUSSION

### 1.    *Sufficiency of the evidence*

Defendant contends the evidence at trial was insufficient to support his conviction for rape of an intoxicated person.  As we explain, the evidence was legally sufficient to support defendant's conviction.

In reviewing the challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)  We "presume[] in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence."  (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.)

---

[2]The clerk's minutes reflect a sentence of two years eight months.  A sentence of three years is reflected in the record of the oral pronouncement of the court, which controls over the clerk's minute order.  (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2.)  The abstract of judgment correctly reflects the three-year sentence imposed by the court.

4

If the circumstances reasonably justify the jury's findings, reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*People v. Nelson, supra,* at p. 210.) Circumstantial evidence may be sufficient to prove a defendant's guilty beyond a reasonable doubt. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329.)

Section 261, subdivision (a) provides that "[r]ape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator" under defined circumstances. One of the listed circumstances is "[w]here a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused." (§ 261, subd. (a)(3).) A person is prevented from resisting within the meaning of section 261, subdivision (a)(3) when "he or she is incapable of exercising the judgment required to decide whether to consent" to a sexual act. (*People v. Giardino* (2000) 82 Cal.App.4th 454, 458.) The level of the victim's intoxication and resulting impairment must have been so great that the victim could no longer exercise reasonable judgment required to decide whether to consent to any sexual acts. (*Id.* at pp. 466–467.) It is not enough that the victim's sexual inhibitions were reduced as a result of some degree of intoxication. (*Id.* at p. 466.)

According to defendant, there was insufficient evidence that Jane Doe was incapable of resisting as a result of her intoxication. He claims there was no evidence concerning the time period over which she consumed alcohol or the elapsed time between her consumption and the sexual act with defendant. He points to evidence that Doe was able to drive successfully to his house to support his contention that she was not so intoxicated that she was unable to exercise reasonable judgment.

While the conclusion urged by defendant could have been drawn by a jury on the basis of the evidence he has chosen to highlight, that conclusion is not reasonable on the basis of other evidence presented to the jury. For instance, the evidence showed that Doe began drinking at 6:30 p.m. and drank at least eight alcoholic drinks on the night in question. Although defendant claims there is no evidence to show the time period over

5

which Doe consumed alcohol, he ignores her testimony that she awoke sometime after 4:00 a.m. and "was still drunk." From this evidence, the jury could have reasonably concluded she had been even more intoxicated earlier, when the assault occurred. Further, although defendant downplays Doe's level of intoxication by arguing she was able to drive successfully to defendant's house after leaving the bar, he ignores Noe Espinoza' testimony detailing Doe's erratic driving, which defendant had described to Espinoza. She had run a red light, swerved across the road, and driven the wrong way out of the parking lot, leading defendant to claim that he had never been more scared in his life than when she drove him home. Doe's erratic driving is consistent with a conclusion that she was intoxicated to the point of being unable to exercise reasonable judgment. The fact that Doe blacked out and lost all memory of what happened in the car before awaking sometime after 4:00 a.m. is further evidence supporting the jury's implied finding that she lacked the ability to exercise reasonable judgment due to her intoxication.

Nevertheless, defendant still argues that because no direct evidence was presented concerning Jane Doe's mental state at the time defendant engaged in sexual intercourse with her, and because it was clear she was capable of resisting at some point in time, the available evidence does not support a conclusion beyond a reasonable doubt as to her state of mind at the time of the offense. Defendant's claim fails for two reasons. First, the argument presumes that the prosecution was required to present direct evidence of Doe's level of intoxication at the time of the assault. To the contrary, the jury was entitled to rely on circumstantial evidence as the basis for an inference concerning Doe's state of mind. (*People v. Bloom, supra,* 48 Cal.3d at p. 1208.) Second, while the prosecutor was required to convince the jury beyond a reasonable doubt of defendant's guilt, that is not the standard on appeal. " 'The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt.' " (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1372.) On appeal, we need only be convinced that substantial evidence, whether contradicted or not, supports the jury's verdict.

6

Viewing the evidence in the light most favorable to the judgment, we conclude there was substantial evidence from which the jury could find that Jane Doe was sufficiently impaired to be unable to exercise reasonable judgment at the time of the assault.

**2.      *Order to reimburse cost of court-appointed attorney***

Defendant contends the trial court failed to comply with the procedural requirements of section 987.8 in directing him to pay $1,000 as reimbursement for being represented by court-appointed counsel, and he argues there is no substantial evidence to support a finding that he has the present ability to pay the reimbursement order. The Attorney General claims defendant forfeited his challenge to the order as a result of his failure to object at the time the order was imposed. As we explain, under the unique circumstances presented here, the claim was not forfeited. Because the record does not reveal that defendant has the present ability to pay for the cost of his representation, the order must be reversed.

**A.      Section 987.8**

Section 987.8 permits a court to order a defendant to pay all or a portion of the cost of court-appointed counsel after notice and a hearing to determine if the defendant has the present ability to pay.[3]  In assessing a defendant's ability to pay, the court may consider both the defendant's present financial position and the defendant's reasonably discernible future financial position, limited to a period of six months in the future. (§ 987.8, subd. (g)(2).)  A defendant who is sentenced to prison "shall be determined not to have a reasonably discernible future financial ability to reimburse" defense costs "[u]nless the court finds unusual circumstances." (§ 987.8, subd. (g)(2)(B).)

The statute sets forth a number of procedural requirements that must be satisfied before a court may require a defendant to reimburse attorney fees. Before the court

---

[3]Section 987.8, subdivision (b) provides in relevant part:  "In any case in which a defendant is provided legal assistance, either through the public defender or appointed private counsel, the court may, after notice and hearing, make a determination of the present ability of the defendant to pay all or a portion of the cost thereof."

initially appoints an attorney for a defendant at public expense, it must give notice to the defendant that the court may require the defendant to reimburse all or a portion of the cost of representation following notice and a hearing if it is determined that the defendant has the present ability to pay. (§ 987.8, subd. (f).) The statute further specifies that a reimbursement order may only be imposed after giving the defendant notice and an opportunity to be heard on the issue of the defendant's present ability to pay. (§ 987.8, subds. (b), (d).) In the case of a defendant sentenced to prison, the court must make an express finding of unusual circumstances before ordering the defendant to reimburse the cost of representing the defendant. (*People v. Lopez* (2015) 129 Cal.App.4th 1508, 1537.)

### B. Background

The probation report indicated that defendant had been employed at a dairy since coming to the United States in 1990. He reportedly earned $2,200 per month but there is no information to suggest he had any assets or savings. At the time he was sentenced, he was not working because he had been in custody awaiting sentencing. The probation officer offered a simple recommendation of "No" concerning whether to require defendant to reimburse all or a portion of the cost of his representation pursuant to section 987.8.

There is nothing in the record on appeal to suggest defendant was informed at the time he was first appointed counsel that he might be required to pay all or a portion of the cost of his representation. There is also nothing in the record to indicate he had any notice in advance of the sentencing hearing that the court would consider requiring him to reimburse attorney fees incurred in his representation.

At the sentencing hearing, as the trial court was concluding its recitation of the sentence as well as various fines and fees it was imposing, defendant's trial counsel—i.e., the deputy public defender appointed to represent him—interjected, "Could the court impose reasonable fees?" The court proceeded to order defendant to pay $1,000 as reimbursement for the cost of his representation pursuant to section 987.8. The court did not explain how it arrived at this figure and did not make any findings concerning

8

defendant's ability to pay. Defendant's trial counsel, whose request prompted the court to impose the reimbursement order, did not object to the order or request a hearing on the issue of defendant's ability to pay.

### C. Forfeiture rule and exception when counsel has conflict of interest

The Attorney General contends defendant has forfeited his challenge to the reimbursement order by failing to object in the trial court, relying upon our Supreme Court's recent decision in *People v. Aguilar* (2015) 60 Cal.4th 862 (*Aguilar*). Defendant responds that the forfeiture rule announced in *Aguilar* does not apply here because that decision expressly declined to address whether the rule should apply when defense counsel's failure to object is attributable to a conflict of interest, which defendant claims is demonstrated by the record here.

In *Aguilar,* the Supreme Court held that a defendant is generally precluded from asserting an appellate challenge to an order for reimbursement of fees paid to appointed counsel under section 987.8 when the defendant failed to object to the order in the trial court. (*Aguilar, supra,* 60 Cal.4th at p. 864.) However, the court noted that the case "did not present" and the court therefore did not address "whether a challenge to an order for payment of the cost of the services of appointed counsel is forfeited when the failure to raise the challenge at sentencing may be attributable to a conflict of interest on trial counsel's part." (*Id.* at p. 868, fn. 4.) The court cited to *People v. Viray* (2005) 134 Cal.App.4th 1186 (*Viray*) as an example of a case addressing such a conflict of interest. (*Aguilar, supra,* at p. 868, fn. 4.)

In *Viray,* the appellate court held that a forfeiture to an appellate challenge to an attorney fee reimbursement order cannot "properly be predicated on the failure of a trial attorney to challenge an order concerning *his own fees*," given the "patent conflict of interest." (*Viray, supra,* 134 Cal.App.4th at p. 1215.) The court reasoned as follows: "We recognize that a particular public defender might, as a salaried employee, feel personally disinterested in a reimbursement order, and might even be willing to oppose it on behalf of the defendant. The same might even be true of an appointed attorney whose claim for payment, and prospects of future employment, were wholly and securely

9

divorced from any reimbursement order the court might make. However, the spectacle of an attorney representing a client in connection with an order requiring that client to pay for the attorney's services, however attenuated the connection may be in fact, carries the patent appearance of a least a vicarious adversity of interests." (*Id.* at p. 1216.) In *Viray*, "it went beyond mere appearance; it was defense counsel himself—the very person who was supposedly protecting defendant's rights in the matter—who brought the fee request to the court's attention, saying '*We're* asking the Court to assess attorney's fees' . . . ." (*Ibid.*) According to the court in *Viray,* "[c]ounsel was at that moment clearly representing his employer, whose interests were flatly contrary to defendant's." (*Ibid.*) The court in *Viray* went so far as to suggest a conflict would exist whenever "the defendant's sole representative [at the time of sentencing] is the same publicly financed counsel for whose services reimbursement is sought." (*Id.* at p. 1216, fn. 15.) The only time the conflict would not exist is when the defendant had retained independent counsel before reimbursement was ordered. (*Ibid.*)

We observe that the broad conflict-of-interest analysis in *Viray,* if applied as an exception to the forfeiture rule announced in *Aguilar,* would effectively make forfeiture the exception rather than the rule. That is so because it will almost always be the case that a defendant will be represented at sentencing by the publicly appointed counsel whose services would be the subject of a reimbursement order. If a perceived conflict-of-interest precludes application of the forfeiture rule in such a case, then an appellate court would almost never conclude a challenge to a reimbursement order is forfeited due to the failure to object. The court in *Aguilar* effectively rejected such a broad application of the conflict-of-interest exception to forfeiture because it found a forfeiture even though there was no indication in *Aguilar* that the defendant had retained independent counsel at the time of sentencing. (*Aguilar, supra,* 60 Cal.4th at pp. 864–865.) Further, we note that section 987.8 does not order the defendant to pay the reimbursement to the public defender's officer or the private attorney who might be appointed to represent the defendant; the reimbursement is paid to the county. (§ 987.8, subd. (g).) Defense counsel's interest in a reimbursement order is therefore attenuated. While defense

counsel may feel some obligation to seek reimbursement on behalf of his or her employer, we cannot say as a general matter that such a concern necessarily creates a conflict of interest in every case that precludes appointed counsel from properly representing the interests of his or her client with regard to a reimbursement order.

Although we have some question about the breadth of any conflict-of-interest exception to the forfeiture rule announced in *Aguilar,* this case does not present a particularly close question. We conclude that the record discloses a conflict of interest that precludes application of the forfeiture rule. Here, the probation officer did not recommend imposing a reimbursement order. No mention of the issue was made until the deputy public defender himself asked the court for an order requiring defendant to reimburse the cost of the representation. Just like in *Viray,* defendant's appointed counsel initiated the request, which likely would have gone unmentioned otherwise. In such a case, defense counsel became an advocate for interests adverse to his client. (*Viray, supra,* 134 Cal.App.4th at p. 1216.) This situation is very different from one in which the probation officer recommends a reimbursement order and the court follows that recommendation without comment from defense counsel.

The situation is also very different from the one described in *Aguilar,* where the court found no basis to conclude that the defendant's appointed counsel had a conflict of interest. (See *Aguilar, supra,* 60 Cal.4th at p. 868, fn. 4.) There, the sentencing court largely tracked the recommendations of the presentence investigation report when it imposed a reimbursement order without objection from defense counsel. (*Id.* at pp. 867–868.) As the court observed in *Aguilar,* the application of the forfeiture rule was particularly appropriate in that case because the defendant had multiple opportunities to object to the fees the court imposed, including in response to the recommendations of the presentence investigation report. (*Id.* at p. 868.) Further, the sentencing court advised the defendant in *Aguilar* that he would have the opportunity to assert the inability to pay in subsequent proceedings before his probation officer. (*Ibid.*)

11

Under the circumstances presented here, we conclude defendant did not waive his right to challenge the fee reimbursement order as a result of his counsel's failure to object.

### D.      Sufficiency of the evidence

Defendant raises a due process claim as well as a substantial evidence challenge to the court's fee reimbursement order. It is unnecessary to address defendant's constitutional claim because the order is subject to reversal on the ground it is not supported by sufficient evidence.

A finding of the ability to pay must be supported by substantial evidence. (*People v. Nilsen* (1988) 199 Cal.App.3d 344, 347.) Here, there was no evidence before the court that defendant had any assets with which to pay a fee reimbursement order. He was incarcerated at the time of the sentencing hearing and was not working. In assessing defendant's present ability to pay, the court was limited to considering a period no more than six months in future (§ 987.8(g)(2)(B)), yet defendant was sentenced to serve three years in prison so there was no reason to believe he would have the ability to pay within six months of his sentencing. Further, as noted above, in a case where the defendant is sentenced to prison, the presumption is that the defendant has no "reasonably discernible future financial ability to reimburse" defense costs unless the court finds unusual circumstances. (§ 987.8, subd. (g)(2)(B).) There is nothing in the record that would support a finding of unusual circumstances sufficient to overcome the statutory presumption.

Accordingly, because there is no substantial evidence in the record to support a finding that defendant had the ability to pay for all or a portion of the cost of his representation by the public defender, the reimbursement order must be stricken.

### 3.      *Review of Jane Doe's medical records*

At the preliminary hearing, Jane Doe testified that she had gone to a clinic the morning after she went out with defendant. After defense counsel subpoenaed the clinic's records, the court conducted an ex parte hearing at which it reviewed the records with the prosecutor. The court chose to disclose a portion of the records to defense

counsel. The disclosed portion of the clinic's records reveals that Doe arranged the appointment for "possibly unprotected intercourse" with an "STD screen requested." The record also notes that Doe told the nurse she did "not know whether she had unprotected intercourse" the previous night but also reported that she did "not feel she was taken advantage of or was in an unsafe environment."

On appeal, defendant asks this court to undertake an independent review of Doe's confidential medical records to assess whether the trial court failed to turn over any revelant, discoverable information. (See *People v. Price* (1991) 1 Cal.4th 324, 493 [parties denied access to privileged material must rely on reviewing court to conduct objective review to assess whether trial court erred].) We have done so and conclude there was no prejudicial error associated with the trial court's decision to turn over a limited portion of the clinic's records to defense counsel.

**DISPOSITION**

The order for reimbursement of attorney fees is reversed. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment striking the attorney fee reimbursement order and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

_____
McGuiness, P.J.


We concur:


_____
Pollak, J.


_____
Siggins, J.