Filed 11/26/13  P. v. Williams CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARNELL WILLIAMS,<br><br>    Defendant and Appellant. | D062840<br><br><br><br>(Super. Ct. No. SCD232643) |

APPEAL from a judgment of the Superior Court of San Diego County, Albert T. Harutunian, III, Judge.  Affirmed as modified.

Sarah Kleven McGann, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Arnell Williams of selling cocaine base in violation of Health and Safety Code section 11352, subdivision (a), and possession of cocaine base for sale

in violation of Health and Safety Code section 11351.5. Williams admitted having a prior strike conviction (Pen. Code,[1] §§ 667, subds. (b)-(i), 1170.12) and a prior prison term conviction (§§ 667.5, subd. (b), 668). The court sentenced Williams to seven years in state prison.

Williams contends (1) the court prejudicially erred by failing to instruct the jury on the lesser included offense of possession of cocaine base; (2) the booking fee the court imposed under Government Code section 29550.1 violated the equal protection clause of the federal Constitution because there is no rational basis to distinguish between related statutes that require a finding of ability to pay and Government Code section 29550.1, which does not; (3) there is insufficient evidence of his ability to pay the Government Code section 29550.1 fee; (4) the court erred in imposing a drug program fee under Health and Safety Code section 11372.7[2] without making a finding of his ability to pay; (5) the court should have charged $540 for a drug program fee rather than $570; and (6) the court violated the constitutional prohibition against ex post facto laws by imposing a restitution fine under section 1202.4, subdivision (b)(1), (2) in the current statutory minimum amount of $240 per year instead of the minimum amount of $200 that was in effect at the time of his offenses. We modify the judgment to reduce the drug program fee to $540. As so modified, the judgment is affirmed.

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

[2]     Williams erroneously refers to the relevant statute as Health and Safety Code section 11372.2.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2011, San Diego Police Department Detective Joseph Harper, who was assigned to a narcotics team, received information that Darryl Jordan, also known as Li'l D, was selling cocaine base and methamphetamine. On February 24, Harper called Jordan on his undercover cell phone and said he wanted to purchase $80 worth of cocaine base. Jordan told Harper he could get him the cocaine base and would send his "people" to meet him at a Kmart parking lot at about 9:00 that evening. The police put a surveillance team in place in the parking lot and at around 9:00 p.m. Harper rode there on a bicycle, dressed in casual clothes. About 15 minutes later, Williams rode up to Harper on a bicycle and Harper asked, "Are you Li'l D's friend?" Williams walked up to Harper and extended his hand. The two shook hands and Williams pressed a small package into Harper's palm. Harper looked down and recognized the substance in the package as cocaine base wrapped in clear plastic. Harper handed Williams a cigarette box that contained $80. He thanked Williams and asked if he could call him again sometime. Williams responded, "Sure." Harper then gave a signal that he had completed the drug purchase and rode away on his bicycle.

After the drug deal was completed, a uniformed police officer in a marked police car drove up to Williams, who appeared to be working on his bicycle. When the officer exited his car, Williams started to mount the bicycle. The officer ordered Williams to stop and placed him under arrest. The cigarette box containing the $80 was on the ground near Williams's feet. The officer removed a cell phone with a push-to-talk, walkie-talkie feature from Williams's pocket. After Williams was arrested, Harper called

3

Jordan and told him his "peoples" never showed up and that he had left the Kmart parking lot but still wanted to buy cocaine base. Jordan asked Harper if he had seen the police arrest his people. Harper "played dumb" and said he "didn't see any of that."

Harper arrested Jordan on March 9, 2011, when Jordan came to his parole office for a urine test. Jordan's parole agent confiscated a cell phone from him that was the same make and model as the one the police took from Williams. When Harper called Jordan's cell phone from his undercover cell phone, Jordan's phone identified the incoming caller as "Mike 80." "Mike" was Harper's undercover name and Harper construed the number "80" as representing the dollar amount of the cocaine base he asked Jordan to sell him. Williams's push-to-talk number was saved in Jordan's phone and Jordan's push-to-talk number was saved in Williams's phone. Records from the cell phone carrier showed that Williams received five calls from Jordan's phone between 8:00 and 9:10 p.m. on the night he was arrested. Williams's sale of cocaine base to Harper occurred around 9:15 p.m. The last call at 9:10 p.m. was close to the time Harper called Jordan to ask where his "people" were.

*Williams's testimony*

Williams testified that he had "befriended" Jordan but he did not "really know" him. On the date of his arrest, Williams was busy the entire day organizing a birthday party for his stepfather. Around 7:00 p.m., Williams received a phone call from Jordan, who had been at Williams's house earlier that day. Jordan told Williams he had left something at the house and asked Williams if he could bring it to him. Williams said he could not leave the house because he had people over and things to do. He told Jordan to

4

come back to the house and then hung up. However, Jordan kept calling Williams, and Williams felt that Jordan was "harassing" him.

Later that evening, Jordan called Williams and said, " 'I have my people over in that area. Could you give it to him?' " Williams did not know what " 'it' " was. He asked, " '[W]ho's your people?' " Jordan responded, " 'I have somebody off El Cajon Boulevard.' " Jordan called Williams again and asked if Williams would give the item he left at the house to " 'my people.' " Jordan said his " 'people' " were just around the corner from Williams and the item he wanted Williams to deliver was in a fruit bowl in the kitchen. Williams grabbed the item from the bowl, put it in his pocket, and rode his bicycle to the Kmart parking lot, where Jordan said his friend would be. He described the item he grabbed as a napkin that was "wadded up." He did not look in the napkin to see what the item was, and did not care what it was because he "was through with [Jordan]."

Williams arrived at the parking lot and saw Harper on a bicycle. He rode up to Harper and asked, " 'Are you Li'l D's people?' " Harper responded, " 'Li'l D.' " Williams handed Harper the napkin and Harper put it in his pocket. Harper then tried to hand Williams a box of cigarettes but Williams immediately dropped the box because he does not smoke. Harper rode off on his bicycle and Williams wanted to do the same, but the chain on his bicycle came off when he began to ride away. As he got off the bicycle and started to fix the chain, the police drove up.

Williams testified that he never looked inside Jordan's napkin to see what was in it and did not knowingly hand drugs to Harper. He did not know what he was handing to Harper; his focus was just on getting back home.

5

*Rebuttal testimony*

In rebuttal, Harper testified that the cocaine base Williams handed him was wrapped in clear plastic. He could visually confirm what it was because there was nothing obstructing his view of it. When he handed Williams the cigarette box containing the $80, Williams reached out and took it from him. Harper saw Williams holding the box in his hand; he did not see Williams drop or toss the box.

DISCUSSION

I. *Failure To Instruct on Simple Possession as a Lesser Included Offense*

Williams contends the court prejudicially erred by failing to instruct the jury on possession of cocaine base as a lesser included offense of selling cocaine base and of possession for sale.[3] "For purposes of determining a trial court's instructional duties, . . . 'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be

_____

[3]   In his reply brief, Williams incorrectly states that "[b]oth parties agree that simple drug possession is a lesser included offense of possession for sale and intent to sell." In their responding brief, the People conceded, and we agree, that simple possession of a controlled substance is a lesser included offense of possession for sale, but did not address whether it is also a lesser included offense of selling the substance. Under the statutory elements test, simple possession of a controlled substance is not a lesser included offense of sale because "[a] conviction for selling controlled substances does not require proof of possession at all, much less possession of a usable quantity." (*People v. Peregrina-Larios* (1994) 22 Cal.App.4th 1522, 1524; *People v. Murphy* (2007) 154 Cal.App.4th 979, 983.) We need not address whether simple possession is a lesser included offense of sale under the accusatory pleading test because resolution of that issue is unnecessary to our disposition of this appeal.

6

committed without also committing the lesser.' [Citation.]" (*People v. Smith* (2013) 57 Cal.4th 232, 240.)

The trial court is required to instruct the jury "sua sponte, on all theories of a lesser included offense which find substantial support in the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) However, instruction on a lesser included offense is not required "on theories that have no such evidentiary support." (*Ibid*.) Thus, an instruction on a lesser included offense is not required "when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime" (*People v. Barton* (1995) 12 Cal.4th 186, 196, fn. 5), or when "there is no proof, other than an unexplainable rejection of the prosecution's evidence, that the offense was less than that charged." (*People v. Kraft* (2000) 23 Cal.4th 978, 1063.)

Here, the trial court did not err in failing to instruct the jury on the elements of simple possession of a controlled substance because the evidence showed Williams was either guilty of the crimes charged (selling cocaine base and possession of cocaine base for sale) or was not guilty of any crime. Knowledge that a drug is a controlled substance is an essential element of unlawful possession of a controlled substance. (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242; *People v. Tripp* (2007) 151 Cal.App.4th 951, 956.) Williams's sole defense was that he was unaware the item he delivered to Harper was a controlled substance. Thus, the jury had an all-or-nothing choice: it could either believe Williams and find he was unaware that he was in possession of a controlled substance before he handed the cocaine base to Harper and therefore committed *no* crime, or it could find he knowingly possessed the cocaine base with the intent to complete a

7

sales transaction when he delivered it to Harper and therefore committed both of the charged offenses. There was no substantial evidence from which the jury could reasonably find that Williams possessed the cocaine base he delivered with knowledge that it was a controlled substance but without the intent to sell it. Consequently, the court was not required to instruct the jury sua sponte on simple possession of a controlled substance.

Even assuming the court erred in failing to instruct the jury on simple possession as a lesser included offense of possession for sale or sale, we conclude the error was harmless. "[I]n a noncapital case, error in failing sua sponte to instruct . . . on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v. Watson* (1956) 46 Cal.2d 818]. A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred [citation]." (*People v. Breverman, supra*, 19 Cal.4th at p. 178.)

It is not reasonably probable that an instruction on simple possession of a controlled substance would have resulted in a more favorable outcome for Williams. There was overwhelming evidence that Williams knowingly sold cocaine base to Harper. Jordan agreed to sell the cocaine to Harper over the phone and told him he would send someone to deliver it to him. Williams then showed up with the cocaine base, just as Jordan had arranged. When he handed the cocaine base to Harper, Harper visually

recognized it as cocaine base because it was wrapped in clear plastic. Williams took the payment from Harper and answered affirmatively when Harper asked if he could call him for future deals. Williams and Jordan each had the same type of walkie-talkie phone with the other's number programmed into it, and they had numerous conversations over those phones shortly before Williams delivered the cocaine base to Harper. Because Jordan undisputedly arranged a drug sale and the point of selling drugs is to make money, it strains credulity to suggest that Jordan never mentioned to Williams that he would be delivering drugs to Harper and *receiving money owed to Jordan* in exchange. The jury obviously did not believe Williams's story that he was ignorant of the nature of the item he delivered to Harper and had no intent to sell drugs. Given the strong evidence that he knowingly participated in the sale of cocaine base to Harper, it is not reasonably probable that the jury would have acquitted Williams of the charged offenses and convicted him only of simple possession or, deadlocked on those charges, if the court had instructed it on simple possession.

## II. *Booking Fee Under Government Code Section 29550.1*

Williams contends the $154 administration fee (booking fee) that the court imposed under Government Code section 29550.1 violated the equal protection clause of the federal Constitution because there is no rational basis to distinguish between Government Code sections 29550 and 29550.2, which require a finding of ability to pay,

9

and Government Code section 29550.1, which does not.[4] We conclude that Williams forfeited this claim.

In *People v. McCullough* (2013) 56 Cal.4th 589, the California Supreme Court observed that " ' " 'a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " ' [Citation.] 'Ordinarily, a criminal defendant who does not challenge an assertedly erroneous ruling of the trial court in that court has forfeited his or her right to raise the claim on appeal.' [Citation.] ' "The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" ' [Citation.] Additionally, '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' [Citation.]" (*Id.* at p. 593.)

Under *McCullough*, Williams forfeited his appellate challenge to the booking fee under Government Code section 29550.1 because he did not challenge the fee below.

---

4    Government Code section 29550, subdivision (a), authorizes counties to impose booking fees on cities and other local arresting agencies, and subdivision (c) of that statute entitles a county to recover a booking fee from a person arrested by a county officer or agent if the person is convicted of a criminal offense related to the arrest. Government Code section 29550.1 entitles cities and other local arresting agencies to recover booking fees imposed by a county from an arrested person who is convicted of a criminal offense related to the arrest. Government Code section 29950.2 entitles a county to recover booking fees from a person arrested by any governmental entity not specified in Government Code sections 29550 or 29550.1 (e.g., the state) if the arrested person is convicted of a criminal offense related to the arrest.

The *McCullough* court specifically held that "a defendant who does nothing to put at issue the propriety of imposition of a booking fee forfeits the right to challenge the sufficiency of the evidence to support imposition of the booking fee on appeal, in the same way that a defendant who goes to trial forfeits [a] challenge to the propriety of venue by not timely challenging it." (*People v. McCullough, supra*, 56 Cal.4th at p. 598.) "[B]ecause a court's imposition of a booking fee is confined to factual determinations, a defendant who fails to challenge the sufficiency of the evidence at the proceeding when the fee is imposed may not raise the challenge on appeal." (*Id.* at p. 597; *People v. Smith* (2001) 24 Cal.4th 849, 852 [all claims involving the trial court's failure to properly make or articulate discretionary sentencing choices raised for the first time on appeal are not subject to review].)  In addition to arguing that the fee under Government Code section 29550.1 cannot be imposed absent a finding of his ability to pay it, Williams contends *there is insufficient evidence in this record of his ability to pay*.  Because Williams essentially challenges the sufficiency of the evidence to support a finding that he is able to pay the fee, under *McCullough* he forfeited the claim by not raising it in the trial court.[5]

In any event, there is substantial evidence in the record that Williams had the ability to pay the $154 booking fee.  He testified that he had his own landscaping company and did bathroom remodeling.  The probation report stated that he earned

---

[5]     In his reply brief, Williams notes that the Supreme Court's opinion in *McCullough* was filed after he filed his opening brief and that under *McCullough* he forfeited his challenge to the administrative fee by not raising it below.

11

between $1,000 and $3,000 per month and "may pay $300 a month to rent [a] room however the owner is assisting him right now." Moreover, section 2700 provides that "[t]he Department of Corrections shall require of every able-bodied prisoner imprisoned in any state prison as many hours of faithful labor in each day and every day during his or her term of imprisonment as shall be prescribed by the rules and regulations of the Director of Corrections." The statute also requires that prisoners who perform assigned work be compensated. (*Ibid.*) Because nothing in the record suggests that Williams will not be able to obtain prison employment, he presumably will have the ability to pay the booking fee from his prison earnings, if not from his pre-incarceration earnings. (See *People v. Frye* (1994) 21 Cal.App.4th 1483, 1486-1487.) Accordingly, to the extent the court erred by failing to expressly find that Williams was able to pay the $154 fee, the error was harmless.

III. *Drug Program Fee Under Health and Safety Code Section 11372.7*

Williams contends the court erred in imposing a drug program fee under Health and Safety Code section 11372.7 in the amount of $570 without making a finding of his ability to pay the fee.[6] We conclude that under the reasoning of *McCullough* discussed above, Williams forfeited this claim by failing to raise it below. (See *People v. Aguilar* (2013) 219 Cal.App.4th 1094, 1097 ["The reasoning of *McCullough* . . . applies to all the fees appellant claims were imposed without a finding of ability to pay."]; *People v. Martinez* (1998) 65 Cal.App.4th 1511, 1518-1519 [prosecution waived any error in court's failure to impose drug program fee by not objecting to court's failure to state reasons for its decision].)

In any event, "[t]he trial court is not required to make an express finding of ability to pay the drug program fee." (*People v. Coleman* (2013) 218 Cal.App.4th 353, 363, citing *People v. Martinez, supra*, 65 Cal.App.4th at p. 1516; *People v. Staley* (1992) 10 Cal.App.4th 782, 785.) Because imposition of the fee is mandatory unless a defendant is

---

6       Health and Safety Code section 11372.7, subdivision (a) provides that "each person who is convicted of a violation of this chapter shall pay a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense." Subdivision (b) of that statute provides: "The court shall determine whether or not the person who is convicted of a violation of this chapter has the ability to pay a drug program fee. If the court determines that the person has the ability to pay, the court may set the amount to be paid and order the person to pay that sum to the county in a manner that the court believes is reasonable and compatible with the person's financial ability. In its determination of whether a person has the ability to pay, the court shall take into account the amount of any fine imposed upon that person and any amount that person has been ordered to pay in restitution. If the court determines that the person does not have the ability to pay a drug program fee, the person shall not be required to pay a drug program fee."

unable to pay it, and nothing in the record suggests Williams lacked the ability to pay, we presume the court found Williams had the ability to pay the fee. (*People v. Clark* (1992) 7 Cal.App.4th 1041, 1050; *People v. Staley, supra*, 10 Cal.App.4th at p. 786 [appellate court assumed appellant was able to pay drug program fee where he failed to object to imposition of fee or to request a hearing on his ability to pay].)

Williams argues that if it was appropriate for the court to impose the drug program fee, the amount of the fee should have been $540. The record does not show the separate components of the $570 fee the court imposed. However, citing *People v. Corrales* (2013) 213 Cal.App.4th 696 (*Corrales*), Williams asserts that the $150 drug program fee under Health and Safety Code section 11372.7, subdivision (a) "was subject to: a $150 state penalty (Pen. Code, § 1464, subd. (a)(1)); a $105 county penalty (Gov. Code, § 76000, subd. (a)(1)); a $30 state surcharge (Pen. Code, § 1465.7, subd. (a)); a $45 state court construction penalty (Gov. Code, § 70372, subd. (a)(1)); a $15 deoxyribonucleic acid penalty (Gov. Code, § 76104.6, subd. (a)(1)); a $15 state-only deoxyribonucleic acid penalty (Gov. Code, § 76104.7, subd. (a)); and a $30 emergency medical services penalty (Gov. Code, § 76000.5, subd. (a)(1))." (*Corrales, supra*, 213 Cal.App.4th at p. 702.) The total amount of the drug program fee plus the incidental charges specified in *Corrales* is $540.

The People do not contest the breakdown or total amount of the $540 fee set forth in *Corrales*. However, they point out that the defendant in *Corrales* was convicted of *one* drug offense (methamphetamine possession) (*Corrales, supra*, 213 Cal.App.4th at p. 698), and the court imposed the maximum drug program fee of $150 for that offense (*id.*

14

at p. 702). Because Williams was convicted of *two* drug offenses and Health and Safety Code section 11372.7 requires imposition of "a drug program fee in an amount not to exceed one hundred fifty dollars ($150) for each separate offense[,]" the People assume the trial court imposed a drug program fee of $180 for both counts, or $90 per count.

The problem with the People's analysis is that the drug program fee constitutes punishment that must be stayed under section 654 on Williams's conviction of possession of cocaine base for sale.[7] (See *People v. Sharret* (2011) 191 Cal.App.4th 859, 869 [laboratory analysis fee under Health & Saf. Code, § 11372.5 constitutes punishment for purposes of section 654]; *People v. Sierra* (1995) 37 Cal.App.4th 1690, 1696 [drug program fee under Health & Saf. Code, § 11372.7 "is a fine and/or a penalty"].) Because the court stayed the prison sentence under section 654 on Williams's conviction of possession for sale, we assume the court intended to impose a $150 drug program fee on each of the two convictions (sale and possession for sale) and stay the fee under section 654 as to the conviction of possession for sale. The court's imposition of a total fee, including incidental penalties and charges, in the amount of $570 instead of $540 presumably was the result of an arithmetic error. Accordingly, we will modify the judgment to reflect the correct amount.

---

7       "[S]ection 654 prohibits the use of a conviction for any punitive purpose if the sentence on that conviction is stayed." (*People v. Pearson* (1986) 42 Cal.3d 351, 361.) On the charge of possession of cocaine base for sale (count 2), the court sentenced Williams to six years to run concurrently with the sentence on the sale charge (count 1), but stayed the sentence on count 2 under section 654.

## IV. *Restitution Fine Under Section 1202.4*

Williams contends the court violated the constitutional prohibition against ex post facto laws by imposing a restitution fine under section 1202.4, subdivision (b)(1), (2) in the current statutory minimum amount of $240 per year instead of the minimum amount of $200 that was in effect at the time of his offenses.[8] We disagree.

"A statute violates the ex post facto clause[s] when, on its face or as applied, it retroactively ' "increase[s] the punishment for criminal acts." ' Thus[,] the prohibition on ex post facto laws prevents the government from changing the punishment for a criminal act after the act has been performed." (*People v. Callejas* (2000) 85 Cal.App.4th 667, 670.) "[C]ourts have consistently held restitution fines qualify as 'punishment' for purposes of the ex post facto clause[s]." (*Ibid.*)

When Williams committed his offenses in 2011, the minimum restitution fine under former section 1202.4, subdivision (b), was $200. A 2011 amendment to section 1202.4 increased the minimum restitution fine to $240 starting on January 1, 2012. (Stats. 2011, ch. 358, § 1.) However, under the former version of section 1202.4, subdivision (b)(1) in effect in 2011, a trial court had discretion to impose a restitution fine

---

[8] "Article I, section 10, clause 1 of the federal Constitution states: 'No state shall . . . pass any bill of attainder, *ex post facto law*, or law impairing the obligation of contracts, or grant any title of nobility.' (Italics added.) Similarly, article I, section 9, of the California Constitution provides: 'A bill of attainder, *ex post facto law*, or law impairing the obligation of contracts may not be passed.' (Italics added.)" (*People v. Grant* (1999) 20 Cal.4th 150, 158.)

in any amount from the statutory minimum up to $10,000.[9]  Because the court was authorized to impose a maximum restitution fine of $10,000 for each felony conviction at the time Williams committed his offenses, Williams was not subjected to increased punishment when the court ordered him to pay $240.[10]  Thus, the $240 fine did not violate the ex post facto prohibition.

Furthermore, "[a] defendant may not contest the amount, specificity, or propriety of an authorized order of a restitution fine for the first time on appeal." (*People v. Turrin* (2009) 176 Cal.App.4th 1200, 1207.)  Because the amount of the restitution fine was authorized, Williams waived the right to challenge it on appeal by failing to challenge it in the trial court.

---

[9]     Former section 1202.4 in 2011 provided:  "(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.  [¶]  (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony . . . ."  (Stats. 2011, ch. 45, § 1.)

[10]     The probation report recommended Williams pay a restitution fine under section 1202.4, subdivision (b) in the statutory maximum amount of $10,000.

17

DISPOSITION

The judgment is modified to reduce the drug program fee under Health and Safety Code section 11372.7 to $540.00. The court shall prepare an amended abstract of judgment and forward a certified copy to the California Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

HALLER, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McINTYRE, J.

18